**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **GARY GAYLOR,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CASE NO. 4:13-CV-00307-RAS-DDB** |
| | § | |
| **INLAND AMERICAN MCKINNEY** | § | |
| **TOWNE CROSSING LP, LLC,** | § | |
| | § | |
| **Defendant.** | § | |

**DEFENDANT INLAND AMERICAN MCKINNEY TOWNE CROSSING LP'S
MOTION TO DISMISS COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT**

Defendant, INLAND AMERICAN MCKINNEY TOWNE CROSSING, LP ("Inland"),[1]

pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), moves to dismiss the Complaint filed by

Plaintiff, GARY GAYLOR, and in support thereof states as follows:

**I.      INTRODUCTION.**

The instant action is no more than a carbon copy of the other sixty-four (64) lawsuits

Plaintiff has filed in less than three years in Georgia, Missouri, and Tennessee, alleging

violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.* (the

"ADA").  His ADA litigation has now invaded Texas, both here and in the Northern District.[2]

Plaintiff has also provided Inland with draft complaints of at least five other lawsuits he intends

to file in Texas federal courts.  Suffice to say that, irrespective of the lawsuit, the facts always go

something like this—Plaintiff, an individual with a disability who generally resides hundreds of

---

[1]      Plaintiff named Inland incorrectly in the Complaint as "Inland American McKinney Towne Crossing LP, LLC."

[2]      *See Gaylor v. Inland Western Dallas Lincoln Park LP, LLC*, No. 3:13-cv-02113-N (N.D. Tex. June 5, 2013).

miles from a defendant's business (here, 760+ miles), alleges that, on some unknown past date, he visited the defendant's business and allegedly encountered numerous unarticulated alleged barriers to access, and that he plans to return to the defendant's business "someday" in the future both as a patron and a tester.

Plaintiff's *modus operandi* is simple; sue, settle for his attorneys' fees, and move on the next suit, without ever having any credible intention of returning the place of public accommodation at issue.[3]   When challenged with a motion to dismiss, Plaintiff inevitably responds with an amended complaint that attempts to address all the shortcomings that are apparent in the complaint.   Through an amended complaint, Plaintiff suddenly and conveniently recalls past visits to the defendant's business and then further alleges specific future plans to return.   Of course, Plaintiff only makes the types of allegations to evince standing to bring suit when he is backed into a corner because it is his only option to defeat a motion to dismiss.

## II.   BACKGROUND.

Plaintiff filed suit on June 5, 2013 for alleged violations of the ADA and Chapter 121 of the Texas Human Resources Code, Tex. Hum. Res. Code Ann. § 121.001, *et seq.* ("Chapter 121").   [*See generally* Dkt. 1].   Plaintiff seeks declaratory and injunctive relief and an award of attorneys' fees and costs under the ADA, as well as declaratory and injunctive relief and statutory damages under Chapter 121.   [*Id.* at pp. 5–6].

Plaintiff, "a resident of Georgia," alleges to be "a qualified individual with a disability under the ADA" who "use[s] a cane and/or a wheelchair to ambulate."   [*Id.* at ¶¶ 3, 5–6].   Inland allegedly owns "McKinney Towne Crossing, generally located at 8900 State Highway 121,

---

[3]   For a discussion of the "cottage industry" in which Plaintiff's engages, see *Rodriguez v. Investco, LLC*, 305 F.Supp.2d 1278, 1281 (M.D. Fla. 2004), where District Judge Gregory Presnell discusses how litigants such as Plaintiff use the recovery of attorneys' fees to abuse the ADA.

McKinney, Texas 75070" (the "Shopping Center") which is "open to the public and provides goods and services."  [*Id.* at ¶¶ 7, 10].  According to the Complaint, Plaintiff allegedly "visits Texas once or twice per year for vacation and to visit friends and family."  [*Id.* at ¶ 4].

On some unspecified date in the past, Plaintiff allegedly visited the Shopping Center and "experienced serious difficulty accessing the goods and services therein due to architectural barriers," which allegedly consist of inaccessible parking, curb cuts, routes, and sidewalks.  [*Id.* at ¶¶ 12, 15].  The Complaint does not allege anything more than a <u>single visit</u> to the Shopping Center.  [*See* Dkt. 1 at ¶¶ 11–12].  Plaintiff alleges that he "continues to desire" to visit the Shopping Center and "plans to and will visit" the Shopping Center once the alleged barriers to access have been removed.  [*Id.* at ¶¶ 13–14].  The Complaint lacks any allegation as to when Plaintiff "plans" to return to the Shopping Center.  [*See generally id.*].  Plaintiff, however, does allege that "[i]ndependent of his intent to return as a patron," he also intends to return "as an ADA tester to determine whether the barriers to access . . . have been remedied."  [*Id.* at ¶ 17].

## III.   STANDARD OF REVIEW.

Under Fifth Circuit law, a Rule 12(b)(1) challenge to subject matter jurisdiction for lack of standing may take one of two forms: a facial attack on the complaint or an attack on the factual basis for standing.  *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).  Where, as here, a movant facially attacks standing, the court takes the allegations in the operative complaint as true in deciding whether to grant the motion.  *See id.*  "It is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking."  *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998).

The standard of review under a Rule 12(b)(6) motion is identical to that used for a Rule 12(b)(1) motion that facially attacks the complaint.  Under a Rule 12(b)(6), the court accepts the

allegations as true and is required to draw all reasonable inferences in the plaintiff's favor in determining whether the complaint states a claim upon which relief can be granted.  *Higdon v. Hensley*, 49 F.3d 728 (5th Cir. 1995).  A complaint must contain enough factual allegations to "nudge" the plaintiff's claims "across the line from conceivable to plausible," or the complaint must be dismissed.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## IV.   ARGUMENT.

The Complaint must be dismissed under both Rule 12(b)(1) and 12(b)(6).  Plaintiff has not suffered a cognizable injury-in-fact within the meaning of Title III of the ADA, and thus lacks standing to pursue the relief demanded.  Plaintiff also fails to state a claim because the Complaint fails to plead with the level of specificity required by well-settled federal law.  In the absence the ADA claim, the court should dismiss the Chapter 121 claim under Texas law because there is no independent basis for the court to exercise jurisdiction over the claim.

### A.   THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS ACTION BECAUSE PLAINTIFF HAS NOT SUFFERED AN INJURY-IN-FACT.

The court must assure itself that any plaintiff attempting to invoke federal jurisdiction has suffered a sufficient injury to satisfy the "case or controversy" requirement of the Article III of the U.S. Constitution.[4]  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60 (1992).  The requirement that a plaintiff have constitutional standing "is an essential and unchanging part of the case-or-controversy requirement of Article III."  *Id.* at 559.  Constitutional standing is

---

[4]     Inland's argument for dismissal applies to Plaintiff's claims under both the ADA and Chapter 121 because Texas courts have found that the broad rights conferred by Chapter 121 are so similar to the ADA that analysis under either one of the regimes will suffice both.  *See Brown v. Lopez*, No. 04-02-006640CV, 2003 WL 21918587, *1 (Tex. App.—San Antonio, Aug. 13, 2003) (noting that Chapter 121 is "substantially similar to the ADA"); *see also Peters v. Norwegian Cruise Line Ltd.*, No. 01-05-00906-CV, 2007 WL 1633555, *11–12 (Tex. App.—Houston, June 7, 2007) (explaining how the policy behind Chapter 121 mirrors the ADA).

necessary to the court's jurisdiction, and must be addressed before proceeding to the merits.[5]
*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 96 (1998).  A suit brought by a plaintiff without Article III standing is not a "case or controversy," and the court lacks jurisdiction to hear the claim.  *Id.* at 101.

Standing is not merely a pleading requirement, but "an indispensable part of the plaintiff's case." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983).  It must be determined as of the time plaintiff's complaint is filed.  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180 (2000) ("[W]e have an obligation to assure ourselves that [the plaintiff] had Article III standing *at the outset of the litigation.*") (emphasis added); *see also Carr v. Alta Verde Indus., Inc.*, 931 F.2d 1055 (5th Cir. 1991).  Subsequent amendments are ineffective, because "[b]y lacking standing to bring a claim [a plaintiff] also lack[s] standing to amend the complaint." *Wright v. Dougherty County*, 358 F.3d 1352, 1356 (11th Cir. 2004). "Belated efforts to bolster standing are futile." *Access 4 All, Inc. v. Wintergreen Commercial P'ship, Ltd.*, CIV.A. 3:05-CV-1307-G, 2005 WL 2989307 (N.D. Tex. Nov. 7, 2005) (quoting *Moyer v. Walt Disney World Co.*, 146 F.Supp.2d 1249, 1253 (M.D. Fla. 2000)).

To satisfy Article III, a plaintiff "must show that (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth*, 528 U.S. at 180–181; *see also Norkunas v. Seahorse NB, LLC*, 444 F.

---

[5]     The plaintiff must also have statutory standing to pursue the relief demanded, but it need not be addressed if the plaintiff loses on the merits anyway. *Citizens for a Better Environment*, 523 U.S. at 97 & n2.  As explained below, that is the situation here.  As a result, statutory standing will not be addressed in this memorandum.

App'x. 412, 415 (11th Cir. 2011) (applying injury-in-fact element in context of Title III of the ADA).  Because Plaintiff cannot establish the first element, the latter two need not be addressed.

### 1.     Development Of Constitutional Standing Under ADA Case Law.

In 1974, the Supreme Court announced that "[p]ast exposure to illegal conduct does not itself show a present case or controversy regarding injunctive relief . . . <u>if unaccompanied by any continuing, present adverse effects</u>."   *O'Shea v. Littleton*, 414 U.S. 488, 495–596 (1974) (emphasis added).   After the ADA became effective in 1992, a body of case law developed in accord with *O'Shea*.  Federal courts across the nation began to evaluate the injury in fact element by using a general two prong analysis concerning the plaintiff's allegations: (1) whether they demonstrated that the identified injury was personal to the plaintiff and (2) whether they showed an actual or imminent threat of future injury at the hands of the defendant.  *See, e.g.*, *Proctor v. Prince George's Hosp. Ctr.*, 32 F.Supp.2d 830, 832 (D. Md. 1998); *Filardi v. Loyola Univ.*, 97 C 1814, 1998 WL 111683, *3 (N.D. Ill. Mar. 12, 1998); *Johanson v. Huizenga Holdings, Inc.*, 963 F.Supp. 1175, 1177 (S.D. Fla. 1997); *Schroedel v. New York Univ. Med. Ctr.*, 885 F.Supp. 594, 599 (S.D.N.Y. 1995); *Aikins v. St. Helena Hosp.*, 843 F.Supp. 1329 (N.D. Cal.1994), *Atakpa v. Perimeter OB-GYN Associates*, *P.C.*, 912 F.Supp. 1566, 1573 (N.D. Ga. 1994).  The analysis is essentially the outgrowth of *O'Shea*, in that it relies on both past exposure <u>and</u> future injury.  *See O'Shea*, 414 U.S. at 495–596.

Concerning the first prong, an injury is personal to the plaintiff if it is "based in reality," to wit, the plaintiff has either (1) personally encountered or observed alleged barriers at a place of public accommodation; or (2) has learned of them through "expert findings."  *Parr v. L & L Drive-Inn Rest.*, 96 F.Supp.2d 1065, 1081 (D. Haw. 2000); *Access Now, Inc. v. South Florida Stadium*, 161 F.Supp.2d 1357, 1365 (S.D. Fla. 2001) ("The *Parr* case does not support

[plaintiff's] entitlement to relief from violations about which he lacked actual knowledge, pursuant either to his <u>personal encounter with those violations or by expert testimony</u> . . . .") (emphasis added); *Resnick v. Magical Cruise Company, Ltd.*, 148 F.Supp.2d 1298, 1303 (M.D. Fla. 2001) ("[T]here is no record evidence that Plaintiffs had knowledge . . . of any alleged violations from <u>personal observation or expert findings</u>") (emphasis added).

Early ADA case law shows that the second prong of the general analysis served as fertile battleground for evaluating whether the plaintiff sufficiently alleged a credible, concrete intent to return, the lack of which warranted dismissal.  For example, in *Atakpa*, the court found that a pregnant plaintiff had no standing to sue a medical facility because she failed to allege that she would seek services from the facility again in the future.  *Atakpa*, 912 F.Supp. at 1574. Similarly, in *Aikins*, the court found that a deaf woman had no standing to sue a hospital because she did not show that she would patronize the hospital again in the future, and if she did, that the hospital would likely discriminate against her.  *Aikins*, 843 F.Supp. at 1334.  Finally, in *Filardi*, the court dismissed a quadriplegic student's claims against a university because, after graduating, she could not show that she would be subjected to alleged barriers located on the university's campus.  *Filardi*, 1998 WL 111683 at *3.

Over time, district courts in the Ninth Circuit refined the second prong of the general analysis into a series of four factors that served as a benchmark to determine whether allegations evince a credible, concrete intent to return.  *See D'Lil v. Stardust Vacation Club*, CIV-S-00-1496DFL PAN, 2001 WL 1825832, *4 (E.D. Cal. Dec. 21, 2001) (citing *Parr* and defining four factors courts should consider as "(1) the proximity of defendant's business to plaintiff's residence, (2) the plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant.").

Following the four factor test espoused by district courts in the Ninth Circuit, district courts in eight other circuits slowly issued opinions that used the four factor test.  *See Fiedler v. Ocean Properties, Ltd.*, 683 F.Supp.2d 57, 72 (D. Me. 2010) (First Circuit); *Access 4 All, Inc. v. G & T Consulting Co., LLC*, No. 06 Civ. 13736(DF), 2008 WL 851918, *8 (S.D.N.Y. Mar. 28, 2008) (Second Circuit); *Access 4 All, Inc. v. 539 Absecon Blvd., LLC*, CIV. 05-5624 (FLW), 2006 WL 1804578, *3 (D.N.J. June 26, 2006) (Third Circuit); *Equal Rights Ctr. v. Abercrombie & Fitch Co.*, 767 F.Supp.2d 510, 516 (D. Md. 2010) (Fourth Circuit); *Wintergreen Commercial P'ship*, 2005 WL 2989307 at *3 (Fifth Circuit); *Vaughn v. Rent-A-Ctr., Inc.*, 2:06-CV-1027, 2009 WL 723166, *7 (S.D. Ohio Mar. 16, 2009) (Sixth Circuit); *Brown v. Grand Island Mall Holdings, Ltd.*, 4:09 CV3086, 2010 WL 489531, *3 (D. Neb. Feb. 8, 2010) (Eighth Circuit); *Fox v. Morris Jupiter Associates*, 05-80689-CIV, 2007 WL 2819522, *4 (S.D. Fla. Sept. 25, 2007) (Eleventh Circuit).  Indeed, the continued use of the four factor test in various circuits makes it the majority view.

The Eastern District of Texas has used the four factor test to analyze the second prong of constitutional standing on at least four occasions, all of which was in the context of whether automated teller machines violated the ADA.  *See Davis v. Am. Nat. Bank of Texas*, 4:12-CV-382, 2012 WL 7801700, *6 (E.D. Tex. Dec. 11, 2012); *Hunter v. First Nat. Bank Texas*, 4:12-CV-00355, 2012 WL 7801699, *4 (E.D. Tex. Dec. 11, 2012); *Davis v. First Nat. Bank of Trenton*, 4:12-CV-396, 2012 WL 7801707, *6 (E.D. Tex. Dec. 11, 2012); *Hunter v. First United Bank & Trust Co.*, 4:12-CV-374, 2012 WL 7004154, *5 (E.D. Tex. Dec. 11, 2012); *accord Wintergreen Commercial P'ship*, 2005 WL 2989307 at *3.  Neither the U.S. Supreme Court nor the Fifth Circuit, however, has yet considered the four factor test.

### 2. Plaintiff Must First Establish That He Personally Encountered, Observed, Or Has Actual Knowledge Of The Alleged Barriers.

Resorting to the four factor test discussed above to analyze the second prong of the general analysis is only necessary if an ADA plaintiff can first show that he meets the threshold for entry into federal court.  More recent ADA case law delves right into analyzing the four factor test, but this analysis need not be done if the Plaintiff has not adequately alleged past exposure to an injury at a place of public accommodation.  *See O'Shea*, 414 U.S. at 495–596. With respect to the ADA, a plaintiff must show that he personally encountered, observed, or has actual knowledge of an alleged barrier, based on expert findings.[6]  *E.g.*, *Parr*, 96 F.Supp.2d at 1081.  The court should not make haste to delving into the four factor test, as other courts have, and must first assure itself that Plaintiff's allegations sufficiently show past exposure.

Although not yet specifically addressed by the Fifth Circuit, other circuits, such as the Eleventh, hold that a plaintiff has no standing to pursue alleged violations of the ADA of which he is unaware at the time he files suit; to hold otherwise would deprive a defendant of fair notice of the claims against him pursuant to Fed. R. Civ. P. 8.  *See Norkunas*, 444 F.App'x. at 415; *see also Duldulao v. Target Corp.*, No. 8:11-cv-02446-VMC-AEP, 2012 WL 6008414, *3 (M.D. Fla. Dec. 3, 2012) ("[W]hile '[s]ome courts have held that a plaintiff need not encounter all barriers nor have knowledge of all barriers to obtain relief . . . courts in the Eleventh Circuit have been more cautious, requiring a showing of plaintiff's actual knowledge of particular barriers for the plaintiff to have standing to challenge those barriers.'"); *Mattix v. Dunn Plaza Investments, LLC*, No. 3:12-CV-43-J-34MCR, 2012 WL 2952432, *1 (M.D. Fla. July 19, 2012) (relying on

---

[6]      Knowledge based on expert findings comports with the statutory text of the ADA stating a plaintiff need not engage in a "futile gesture" to experience an alleged injury in order to have standing.  *See* 42 U.S.C. § 12188(a)(1).  Instead, a plaintiff need only have "actual notice" of an alleged barrier, which may be provided by an expert.  *E.g.*, *Parr*, 96 F.Supp.2d at 1081.

*Norkunas* to hold that plaintiff had no standing to pursue ADA claims for alleged barriers not identified in the complaint).

The Complaint makes clear that Plaintiff has no knowledge of alleged barriers based on expert findings because Plaintiff fails to allege that an expert performed an inspection to identify the alleged barriers referenced in paragraph 15 of the Complaint. So, the analysis all boils down to whether the Complaint sufficiently shows what Plaintiff personally observed or encountered at the premises. [*See* Dkt. 1 at ¶ 15]. Although the Complaint generally identifies "inaccessible" parking, curb cuts, and routes at the Shopping Center, it is impossible to determine which parking, curb cuts, and routes Plaintiff himself personally observed.

If Plaintiff has not himself personally encountered each and every alleged barrier (whatever they may be) at the Shopping Center, then he has no standing to pursue them because the only way he could in the absence of personally encountering them is through expert findings. As discussed above, there are no expert findings. But even if Plaintiff has sufficiently described which parking, curb cuts, and routes he personally observed, this alone is still insufficient to confer standing to pursue these alleged barriers because Plaintiff must also sufficiently allege the likelihood of future injury. *See O'Shea*, 414 U.S. at 495–596.

### 3.     Plaintiff Fails To Allege A Credible, Concrete Intent To Return.

The Complaint fails to establish a credible, concrete intent to return under the four factor test, discussed above (*i.e.*, proximity of defendant's business to plaintiff's residence; plaintiff's past patronage of defendant's business; definitiveness of plaintiff's plans to return; and plaintiff's frequency of travel near defendant). The court should rely on the four factor test, as it has done in the past, *e.g.*, *Am. Nat. Bank of Texas*, 2012 WL 7801700 at *6; *First Nat. Bank Texas*, 2012 WL 7801699 at *4, and hold that Plaintiff has no standing to pursue this action.

a.      Proximity.

A plaintiff's proximity to a defendant's place of public accommodation is generally

probative of the likelihood that the plaintiff will return.  *See Daniels v. Arcade, L.P.*, 477 F.

App'x 125, 129 (4th Cir. 2012) (noting that the plaintiff's home near the defendant's business

weighed in favor of standing); *Equal Rights Ctr. v. Abercrombie & Fitch Co.*, 767 F. Supp. 2d

510, 517 (D. Md. 2010) (finding standing where plaintiff "live[d] only a few miles from the

stores in question").   "As the distance between a plaintiff's residence and a public

accommodation increases, the potential for the occurrence of future harm decreases."  *Disabled*

*Patriots of Am., Inc. v. City of Trenton*, CIVA 07 CV 3165(FLW), 2008 WL 4416459, *4 (D.N.J.

Sept. 24, 2008).

Federal district courts in various circuits consistently hold that a "considerable distance,"

especially over 100 miles, weighs heavily against a finding of standing.  *See, e.g.*, *Nat'l Alliance*

*for Accessibility, Inc. v. Big Lots Stores, Inc.*, 1:11-CV-730, 2013 WL 3147721, *4 (M.D.N.C.

June 19, 2013) (finding that plaintiff's residence more than 700 miles from defendant's business

weighed heavily against standing); *Anderson v. Kohl's Corp.*, 2:12-CV-00822, 2013 WL

1874812, *4 (W.D. Pa. May 3, 2013) (finding it unlikely that plaintiff would return to

defendant's business less than 25 miles from her residence because there were at least two

locations of the defendant's business located closer to her residence); *Reviello v. Philadelphia*

*Fed. Credit Union*, CIV.A. 12-508, 2012 WL 2196320, *4 (E.D. Pa. June 14, 2012) (finding

plaintiff's proximity did not establish an intent to return where plaintiff lived 50 miles from

subject ATM); *Norkunas v. Park Rd. Shopping Ctr., Inc.*, 777 F. Supp. 2d 998, 1002 (W.D.N.C.

2011) ("[T]he distance of 120 miles between Plaintiff's residence and the [premises] is too great

for the Court to consider it likely that Plaintiff will have occasion to return to Defendant's

establishment . . . ."); *D'lil v. El Torito Restaurants, Inc.*, No. C 94-3900-CAL, 1997 WL 714866, *4 (N.D. Cal. June 24, 1997) (finding no standing because plaintiff lived over 100 miles from restaurant and had not, in the four years since the incident of discrimination, attempted to visit the restaurant).

Here, Plaintiff alleges to be "a resident of Georgia."  [Dkt. 1 at ¶ 3].  When deciding a motion to dismiss, the court must limit its consideration to well-pleaded factual allegations, judicially noticed matters, and documents central to or referred to in the complaint.[7]  *La Grasta v. First Union Sec. Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).  The court can take judicial notice of the geographic distance between the Georgia state line and the Shopping Center, which is approximately 760 miles, because such distance is capable of accurate and ready determination.  *See* Fed. R. Evid. 201(b).  Of course, Plaintiff's residence is not likely located physically on the Georgia state line, which means he more than likely resides even further away than 760 miles.

Plaintiff also alleges that he travels to <u>Texas</u>, not the Shopping Center, "once or twice a year for vacation and to visit friends and family."  [Dkt. 1 at ¶ 4].  There is no allegation that these "vacation[s]" are in McKinney, Texas, or that these "friends and family" live anywhere near the Shopping Center.  These are important facts to consider because federal courts have found that ADA plaintiffs lack standing to sue business that are "off the beaten path" from their routes of travel.  *See, e.g.*, *Payne v. Chapel Hill North Properties*, 2013 WL 2285248, at *3 (M.D.N.C. May 23, 2013) (dismissing claims in part because the plaintiff had no conceivable reason to alter her path of travel to visit the property at issue while traveling through the state);

---

[7]     The court may take judicial notice of facts that are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

*Norkunas*, 777 F.Supp.2d at 1002 (same); *Rosenkrantz v. Markopolous*, 254 F.Supp.2d 1250,

1253 (M.D. Fla. 2003) (same).  Consequently, the first factor weighs heavily against Plaintiff.

b.     Past Patronage.

A plaintiff's lack of past patronage negates the possibility of future injury unless he can

show a business or familial connection to the location.  *American National Bank of Texas*, 2012

WL 7801700 at *6 (citing *Molski v. Kahn Winery*, 405 F.Supp.2d 1160 (C.D. Cal. 2005))

(finding that when the plaintiff only visited the defendant's establishment once prior to filing suit

and had no connection to the establishment, past patronage weighed against future harm and a

finding of injury in fact).  If a plaintiff visited the defendant's business only once, then there is a

presumption against future injury unless the causal connection is explained.  *Wintergreen*

*Commercial P'ship*, 2005 WL 2989307 at *4; *but see Payne v. Sears, Roebuck & Co.,* No. 5:11–

CV614–D, 2012 WL 1965389, *5 (E.D.N.C. May 31, 2012) ("ADA Title III plaintiffs, aware

that a single visit to an establishment weighs against their having standing, are likely to visit the

establishment twice before suing its owner, thus intentionally avoiding the single-visit rule" and

that "[s]uch litigation gamesmanship says nothing about a plaintiff's likelihood of suffering

future injury."); *Naiman v. New York University*, No. 95 CIV 6469(LMM), 1997 WL 249970, *5

(S.D.N.Y. May 13, 1997) (finding multiple visits still insufficient to establish standing, in the

absence of additional allegations).

The failure to provide dates or describe the purposes for any alleged prior visits "casts

doubt" on whether a plaintiff will ever patronize a location in the future.  *See Access 4 All, Inc. v.*

*Boardwalk Regency Corp.*, No. 08-3817 (RMB/JS), 2010 WL 4860565, *8 (D.N.J. Nov. 23,

2010).  At least one court has declined to treat the past patronage factor as requiring a rote

quantitative analysis, asking instead whether a plaintiff's past patronage suggests that the

plaintiff "prefers" the alleged offending establishment.  *Wilson v. Costco Wholesale Corp.*, 426 F.Supp.2d 1115, 1122 (S.D. Cal. 2006).

In *Wilson*, the court found that the plaintiff lacked standing because, although he alleged that he had visited a Costco store in the past, nothing in the record indicated that the plaintiff preferred Costco to other stores selling the same goods and because nothing in the record suggested that the plaintiff preferred the particular Costco store at issue.  *Id.*  Similarly, in this case, Plaintiff has not alleged that he prefers any of the common stores that are present at the Shopping Center, many of which, such as Target, Lowe's, and Best Buy, have a national presence.[8]  What is more, Plaintiff failed to allege <u>when</u> in the past he allegedly visited the Shopping Center, and there is no indication in the Complaint that he visited the Shopping Center more than on one past occasion, which further warrants dismissal.  *See Wintergreen Commercial P'ship*, 2005 WL 2989307 at *4.  Accordingly, the second factor weighs heavily against Plaintiff.

c.      Definitiveness of Intent to Return.

The definitiveness of a plaintiff's intent to return to a place of public accommodation is the most outcome-determinative of standing because it "arises from the very 'core' of the *Lujan* holding."  *Brown v. Showboat Atl. City Propco, LLC*, CIV.A. 08-5145 NLH, 2010 WL 5237855, *9 (D.N.J. Dec. 16, 2010).  "To obtain forward-looking equitable remedies, a plaintiff must show she faces imminent threat of future injury."  *Fisher v. Univ. of Tex. at Austin*, 631 F.3d 213, 217 (5th Cir. 2011); *James v. City of Dallas*, 254 F.3d 551, 563 (5th Cir. 2001) (stating that in order

---

[8]      The court is also permitted to take judicial notice of the the Shopping Center's website, http://www.inlandgroup.com/american/images/400b44619_Bro.pdf, for purposes of a motion to dismiss.  *See, e.g.*, *Caldwell v. Caldwell*, No. C05-4166, 2006 WL 618511, *4 (N.D. Cal. 2006) (finding that a court may take judicial notice of web site relating to motion to dismiss); *JB Oxford Holdings, Inc. v. Net Trade, Inc*. 76 F. Supp. 2d 1363, n.10 (S.D. Fla. 1999) (same).  The website reflects approximately 57 stores and restaurants that are located at the Shopping Center.

to have standing to seek injunctive relief, a plaintiff must demonstrate that he is "likely to suffer future injury by the defendant").

A plaintiff's "profession" of an intent to return to a place he has visited before is generally insufficient to establish standing.  *See Lujan*, 504 U.S. at 564. "Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury" required by Supreme Court precedent interpreting Article III.  *Id.*; *accord, e.g.*, *Access for America, Inc. v. Associated Out-Door Clubs, Inc.*, 188 F.App'x 818, 818 (11th Cir. 2006) (finding "some day" intentions insufficient to establish standing); *Access for the Disabled, Inc. v. First Resort, Inc.*, No. 8:11-cv-2342-T-30EAJ, 2012 WL 4479005, *6 (M.D. Fla. Sept. 28, 2012) (same); *Wittmann v. Island Hospitality Mgmt.*, No. 09-3698 RMB/KMW, 2011 WL 689613, *7 (D.N.J. Feb. 18, 2011) (same); *Grand Island Mall Holdings, Ltd.*, 2010 WL 489531 at *4 (same); *Access 4 All, Inc. v. Trump Intern.*, 458 F.Supp.2d 160, 168 (S.D.N.Y. 2006) (same); *Tyler v. Kansas Lottery*, 14 F. Supp. 2d 1220, 1225 (D. Kan. 1998) (same).

Although a plaintiff does not need to engage in the "futile gesture" of re-visiting a place of public accommodation that allegedly does not comply with the ADA, he must still prove that he would visit the defendant's business in the imminent future but for those safety barriers. *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000).  When assessing the definitiveness of a plaintiff's plans to return, courts have considered booked hotel reservations or airplane tickets. *Lujan*, 504 U.S. at 579 (Kennedy, J., concurring) (citing *Lyons*, 461 U.S. at 101–02) (explaining that a requirement that the plaintiff demonstrate the acquisition of airline tickets or announce a "date certain" to return to the location at the core of their suit is not trivial because a plaintiff must establish a personal stake in the case's outcome).  Vague and self-serving desires to revisit

a particular establishment fall short of the definitiveness required to show a likelihood of future harm.  *Norkunas*, 777 F.Supp.2d at 1002.

An alleged desire to visit a business is not credible where that specific desire could be fulfilled at multiple locations.  *See, e.g.*, *Freydel v. New York Hosp.*, No. 00-7108, 2000 WL 1836755, *6 (2d Cir. Dec. 13, 2000) (finding that plaintiff lacked standing to sue a hospital where there were a number of hospitals located closer to the plaintiff's home); *Schroedel*, 885 F.Supp. at 599 (same).  For example, in *Judy v. Pingue*, the plaintiff alleged "that he prefer[ed] Donatos pizza, enjoy[ed] shopping in Worthington, and ha[d] friends in the area."  No. 2:08-cv-859, 2009 WL 4261389, *4 (S.D. Ohio Nov. 25, 2009).  The *Judy* Court found that the plaintiff lacked standing because, among other reasons, his desire to eat at a particular chain restaurant could have been fulfilled "at any number of locations" and therefore he did not evince a credible desire to return to the property.  *Id.*

In light of the foregoing authority, this case is easily decided.  The allegations of the Complaint amount to no more than precisely the type of "someday" intentions warned against by the *Lujan* court.  [*See* Dkt. 1 at ¶¶ 13–14].  To be sure, there is no allegation as to when Plaintiff will return to the Shopping Center.  The Complaint simply alleges that Plaintiff "visits Texas once or twice a year," but fails to allege when Plaintiff will return to Texas, or the Shopping Center for that matter.  [*Id.* at ¶ 4].  By extension, the Complaint also fails to allege any specific travel arrangements that Plaintiff has made to return to the Shopping Center, which Supreme Court Justice Kennedy observed to be indicative of a plaintiff's "personal stake" in the outcome of the case.  Finally, Plaintiff alleges no special interest in any of the stores at the Shopping Center, many of which, as previously stated, have a national presence.  Therefore, Plaintiff's

desires to shop and dine at any of the stores at the Shopping Center can undoubtedly be fulfilled in countless locations closer to his residence in Georgia.

Plaintiff's status as a "tester," which bears on the definitiveness of his intent to return is also not conclusive of his purported standing to bring his ADA claims.  Although the Fifth Circuit has not yet addressed whether a tester, without more, has standing to bring ADA claims, other federal district courts have routinely found that a plaintiff may not create standing where it does not otherwise exist simply by alleging that he is a "tester" to ensure compliance.  *See, e.g.*, *Norkunas*, 777 F.Supp.2d at 1005 ("[T]he law makes clear that a Title III plaintiff cannot use her status as a tester to satisfy the standing requirements where she would not have standing otherwise."); *Judy*, 2009 WL 4261389 at *5 (stating that "[a]ny tester status that [the plaintiff] might possess does not confer standing to seek prospective relief where he cannot show a reasonable likelihood of returning to [the] property"); *Kramer v. Midacamo*, 656 F.Supp.2d 740, 747 (N.D. Ohio 2009) (same); *Harris v. Stonecrest Care Auto Ctr., LLC*, 472 F.Supp.2d 1208, 1219–20 (S.D. Cal. 2007) ("Where [Title III] litigation is the only reason for a plaintiff's visit to a particular local establishment, once litigation is complete it is unlikely such a plaintiff will return to avail himself of the business' goods or services, or to visit the local business for any other reason.").

In fact, those federal courts finding that a tester has standing to pursue Title III claims have done so because of the plaintiffs' "dual motivation."  *See Molski v. Price*, 224 F.R.D. 479 (C.D. Cal. 2004).  In *Price*, an ADA plaintiff filed an action seeking injunctive relief against a California service station in connection with the plaintiff's inability to use the defendant's restroom because a designated handicap parking space was not available.  *Id.* at 480–81.  The defendant's establishment was located off of a highway; the plaintiff made 10 to 50 trips per year

upon the very same highway and had taken the exit which leads to the service station "no more than five times." *Id.* The plaintiff testified that he intended to return to the service station to "check out its accessibility and to use the restroom facilities." *Id.* at 483.  The court denied the defendant's motion to dismiss and concluded that "[t]he record here establishes that Plaintiff Molski has a . . . dual motivation" and held that the plaintiff had met his burden of establishing "his intent to return to Defendant's service station." *Id.* at 484.

Plaintiff's circumstances are factually distinguishable from *Price*.   Unlike *Price*, Plaintiff's residence and Inland's business are located in different states, Plaintiff has visited the property only once, and Plaintiff does not allege to have traveled in close proximity to Inland's business on any other occasion as did the plaintiff in *Price* did on multiple occasions. Accordingly, Plaintiff's status as a tester does nothing to bolster his standing to pursue claims against Inland because he has no dual motivation for returning to the premises given that he has not frequently patronized the Shopping Center.

d.   <u>Frequency of Travel</u>.

Standing to pursue claims under Title III of the ADA is reserved for *bona fide* patrons of a place of public accommodation.  *See Stonecrest Care Auto Ctr.*, 472 F.Supp.2d at 1219 ("This [c]ourt is unable . . . to find any authority showing that Title III of the ADA was intended to create such broad rights against individual businesses by private parties who are not bona fide patrons, and are not likely to be bona fide patrons in the future."); *cf. Daniels*, 477 F. App'x. at 129 (affirming district court because plaintiff regularly visited the property and lived only 20 minutes away).   A naked allegation that a plaintiff "frequently travels" near the defendant's business is patently insufficient to establish standing.  *Wintergreen Commercial P'ship.*, 2005

- 18 -

WL 2989307 at *4. Failing to provide information regarding frequency of travel near the defendant's business militates against standing.   *City of Trenton*, 2008 WL 4416459 at *6.

"[A] plaintiff's general travel to a state does not support a finding that said plaintiff has demonstrated a threat of future harm related to a specific establishment within the state." *Rite Aid,* 2011 WL 4499294 at *9: *Norkunas*, 777 F.Supp.2d at 1002; *see also Nat'l Alliance for Accessibility, Inc. v. Bhuna Corp.,*No. 1:11CV79, 2011 WL 6935497, at *3–4 (W.D.N .C. Dec. 3, 2011) (finding it "implausible" that a serial litigant, like Plaintiff, could frequently return to so many out of state businesses that she sued because she lived hundreds of miles away).   For example, in *Norkunas,* although the court accepted as true plaintiff's claim that he "travel[s] through the Charlotte metropolitan area . . . three to four times per year," the court found that this fact did not give plaintiff standing when plaintiff had "little conceivable reason to leave the immediate I–77/I–485 corridors, and no reason at all to drive the distance between the interstate highway and the [establishment] in the course of his travels." *Norkunas*, 777 F.Supp.2d at 1002.

As previously discussed, Plaintiff is not a bona fide patron of the Shopping Center because he must travel some 760 miles to even patronize the stores and restaurants located therein, which makes it impossible for Plaintiff to both reside in Georgia and frequent the Shopping Center.   What is more, the sheer number of active lawsuits Plaintiff has pending in several States severely undercuts the notion that he even has the time to frequently travel near the Shopping Center because in every lawsuit, Plaintiff alleges that he intends to return to the place of public accommodation at issue.   Plaintiff also does not even allege that he frequently travels to McKinney, Texas, let alone the Shopping Center specifically.   His general travel to the State of Texas "once or twice a year" is on all fours with *Norkunas*, which found that general travel to a state does not demonstrate a threat of future harm at any specific establishment.  *Norkunas*, 777

F.Supp.2d at 1002.  For all the court and Inland knows, Plaintiff may be returning to some other location in Texas located hundreds of miles away from the Shopping Center.  As a result, the fourth factor weighs heavily against Plaintiff's purported standing to bring this action.

**B.      PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF BECAUSE THE ALLEGATIONS OF THE COMPLAINT ARE VAGUE, LEGAL CONCLUSIONS.**

To state a *prima facie* claim under Title III of the ADA, a plaintiff must show (1) that he is a disabled individual; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) the defendants discriminated against the plaintiff within the meaning of the ADA on the basis of his disability.  *See* 42 U.S.C. § 12182(a).  For pleading purposes, Plaintiff sufficiently alleged that he is a disabled individual and that Inland owns, leases, or operates a place of public accommodation; therefore, the only element in dispute is whether the Complaint sufficiently alleges that Inland discriminated against Plaintiff on the basis of his disability.  The Complaint does not do so because it fails to identify where the alleged barriers to access are located, vaguely describes the alleged barriers, and impermissibly seeks to expand Plaintiff's purported standing to pursue barriers that do not relate to his disability.

**1.      Plaintiff's Allegations Force The Court To Engage In Guesswork.**

There is a common sense approach to evaluating whether the Complaint states a claim upon which relief can be granted that cannot be overstated.  The place of public accommodation at issue in this lawsuit is not a single building with a parking lot having only a few spaces, one sidewalk out front, and several curb cuts.  By contrast, Inland's business is a massive shopping complex containing over 57 stores and restaurants, with hundreds of parking spaces, numerous sidewalks, curb cuts, and routes of travel.  So, allegations suggesting that there are violations of federal law "somewhere" in this sea of development does not place Inland on fair notice of the

claims against it.  From Plaintiff's allegations, Inland cannot determine if it even owns all of the parking, curb cuts, and routes and sidewalks "throughout the property."[9]

From a common sense perspective, the better practice would certainly be for Plaintiff to specifically allege the locations of the alleged barriers at the Shopping Center, particularly given that Plaintiff alleged that he "personally observed" them or re-plead that his knowledge of alleged barriers is based on expert findings.  Stated another way, if Plaintiff personally observed them, then he should have no problem specifically alleging the locations of them.  Requiring Inland to blindly inspect all of the parking areas, curb cuts, routes and sidewalks at the Shopping Center would do no more than create unnecessary costs and be the equivalent of Plaintiff conducting a fishing expedition on nothing more than mere speculation that alleged barriers to access exist.

        2.      **The Allegations Of The Complaint Do Not Comport With Well-Settled Rules Of Pleading.**

In evaluating whether a plaintiff has stated a claim for relief, conclusory allegations are "not entitled to be assumed true."  *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).  The factual allegations in the complaint must nudge the plaintiff's claims from merely plausible to conceivable.  *See id.*  Indeed, the incredible vagueness and careless ambiguity of the alleged non-exclusive list of violations of the ADA in paragraph 15 of the Complaint renders the alleged barriers so unintelligible as to fall below the minimum "notice pleading" standards set forth in Fed. R. Civ. P. 8.  *See, e.g.*, *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 955 (9th Cir. 2011) (finding that a complaint in a Title III ADA case is insufficient if it leaves "the federal court to guess which, if any, of the alleged violations deprived [the plaintiff] of the same full and

---

[9]    For example, it is not uncommon for anchor tenants at a shopping center to own their own tenant spaces and the parking, sidewalks, and curb cuts adjacent thereto.  So, the "barriers," as currently alleged, could be directed at areas of the Shopping Center that Inland does not own.

equal access that a person who is not wheelchair bound would enjoy"); *Ocaso, S.A. Compania de Seguros y Reaseguros v. Puerto Rico Maritime Shipping Authority*, 915 F.Supp. 1244, 1254 (D. Puerto Rico 1996) ("The liberal construction accorded a pleading under Rule 8(f) <u>does not require the courts to fabricate a claim</u> that a plaintiff has not spelled out in his pleadings . . . .") (emphasis added); *Shelley v. Trafalgar House Public Ltd. Co.*, 918 F.Supp. 515, 521 (D. Puerto Rico 1996) (noting that courts should "canvass the material facts in a light that flatters, <u>but does not impermissibly distort</u>, the nonmoving party's claims") (emphasis added).

Here, the Complaint has not been pled with the level of specificity required by *Twombly* and its progeny.  At the outset, the allegations of the Complaint make it impossible to determine when Plaintiff actually visited the premises, which prevents Inland from knowing whether the statute of limitations has already run on Plaintiff's claims.  Plaintiff alleges only that he "visited the property" and "plans to and will visit" the Shopping Center again in the future.  [Dkt. 1 at ¶¶ 11, 14].  The Complaint also alleges that Plaintiff encountered certain alleged barriers "throughout the property."  [*Id.* at ¶ 15].  These allegations are legal conclusions and bare assertions that other courts have to be devoid of further factual enhancement.  *E.g.*, *Nat'l Alliance for Accessibility, Inc. v. Millbank Hotel Partners*, CIV.A. RDB 12-3223, 2013 WL 653955 (D. Md. Feb. 20, 2013).  To be sure, the Complaint provides no facts about how Plaintiff encountered the alleged barriers to access or even the nature of the alleged barriers, other than to state in conclusory fashion that they violate the ADA.

Federal courts have ordered ADA plaintiffs to file more definite statements when, as here, alleged barriers are vaguely pled.  *See, e.g.*, *Walden v. Taubman Regency Square Associates, LLC*, No. 3:10-cv-855-JAG, Dkt. 8 (E.D. Va. April 5, 2011) (ordering plaintiff to file a more definite statement and re-plead every alleged violation with "precise information

allowing the Court to determine whether the plaintiff had a pre-filing factual basis for the allegation and allowing the defendant to respond to the plaintiff's precise allegations" by listing the date the plaintiff visited the property, the location of the violation and a precise description of the alleged barrier, including measurements, if available). The *Walden* court also ordered that the plaintiff, his attorneys, and any agents could not re-visit the property until after the plaintiff had amended his allegations in order to prevent the plaintiff and/or his counsel from visiting the property after-the-fact to expand the plaintiff's standing. *Id.*

Should the court dismiss the Complaint, without prejudice, it should impose conditions similar to those in *Walden* because the opinion stands for the proposition that standing is essentially determined by a "snapshot" as of the date the complaint is filed. The *Walden* rationale is sound because it prevents plaintiffs from revisiting a place of public accommodation after suit has been filed in order to drum up standing to gain entry into federal court. The court should adopt this rationale as its own.

### 3. The Alleged Barriers Must Relate To Plaintiff's Disability.

Although Inland concedes that, for pleading purposes, Plaintiff has adequately alleged that he has a disability within the meaning of the ADA, this alone does not give him "carte blanche standing to pursue Title III claims that every disabled person may have." *Ass'n for Disabled Americans, Inc. v. 7-Eleven, Inc.*, No. 3:01-CV-0230-H, 2002 WL 546478, *4 (N.D. Tex. Apr. 10, 2002). At most, ADA plaintiffs have standing to pursue claims related to their specific disability. *Id.* (emphasis added); *see also Steger*, 228 F.3d at 893 (finding that visitor to office building could not seek relief for ADA violations in building not related to his disability); *Ass'n for Disabled Americans, Inc. v. Claypool Holdings LLC*, No. IP00-0344-C-T/G, 2001 WL

1112109, *21 (S.D. Ind. Aug. 6, 2001) (limiting a plaintiff's standing to the barriers raised in the complaint related to his disabilities).

Paragraph 14 of the Complaint makes clear that Plaintiff is seeking relief not only for those alleged barriers identified in paragraph 15 but also "any other barriers." This is impermissible because these "other barriers" are not identified in the Complaint and, by extension, it is impossible for the court to know if these "other barriers" relate to Plaintiff's mobility impairment. The court should not permit Plaintiff to expand his purported standing "to pursue claims beyond the scope of Article III." *7-Eleven, Inc.*, 2002 WL 546478 at *4.

## C. THERE IS NO INDEPENDENT BASIS FOR THE COURT TO EXERCISE JURISDICTION OVER THE TEXAS STATE LAW CLAIM.

As an alternative basis for dismissal of Plaintiff's Chapter 121 claims, *see supra* note 4, the court should also "decline to exercise supplemental jurisdiction" over the Chapter 121 claims because in the absence of the ADA claim, there is no other claim over which the court has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3). Plaintiff's only jurisdictional linchpin to this forum is through 28 U.S.C. § 1331.[10]   [Dkt. 1 at ¶ 1]. Supplemental jurisdiction should not ordinarily be exercised where there is no federal claim. *Willis v. Lacox*, 9:10CV108, 2012 WL 441198, *10 (E.D. Tex. Feb. 10, 2012) (citing *Slaughter v. Allstate Insurance Co.*, 803 F.2d 857 (5th Cir. 1986)). Refusal to entertain state-law claims pursuant to supplemental jurisdiction is favored when, as here, (1) federal claims to which they are pendent are dismissed and (2) factors of judicial economy, convenience, and fairness to litigants are not present. *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350–51, (1988); *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir.2008). Here, the court should dismiss the ADA claims, and because this action is in its

---

[10]   But even if Plaintiff had alleged diversity jurisdiction pursuant to 28 U.S.C. § 1332, jurisdiction would fail because there are no citizenship allegations in the Complaint and the amount in controversy does not exceed $75,000.

infancy and no discovery has yet occurred, judicial economy and convenience do not counsel towards the court exercising supplemental jurisdiction.  Accordingly, the court should dismiss both Plaintiff's ADA and Chapter 121 claims.

      **WHEREFORE,** Defendant, INLAND AMERICAN MCKINNEY TOWNE CROSSING, LP, respectfully requests that the court enter an Order (a) dismissing Plaintiff's claims against Inland pursuant to Fed. R. Civ. P. 12(b)(1), with prejudice; (b) alternatively, dismissing Plaintiff's claims against Inland pursuant to Fed. R. Civ. P. 12(b)(6); (c) awarding attorneys' fees and costs; and (d) any such further relief as the Court deems just and proper.

Dated: August 5, 2013                      Respectfully submitted,

                                         By:    *s/ Farrell A. Hochmuth*
                                              Farrell A. Hochmuth
                                              Texas Bar No. 24041107
                                              Federal Bar No. 37072
                                              fhochmuth@bakerlaw.com
                                              Baker & Hostetler LLP
                                              1000 Louisiana Street
                                              Suite 2000
                                              Houston, TX  77002-5018
                                              Telephone: 713.751.1600
                                              Facsimile: 713.751.1717

                                              *Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that the foregoing has been electronically filed using this Court's ECF system, which will serve an electronic copy to Jeff A. Wells, Esq., Wells Crosland, PLLC, 12225 Greenville Ave. Suite 700, Dallas, Texas 75243, on this 5th day of August 2013.

*s/ Farrell A. Hochmuth*
Farrell A. Hochmuth