**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **GARY GAYLOR,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CASE NO. 4:13-CV-00307-RAS-DDB** |
| | § | |
| **INLAND AMERICAN MCKINNEY** | § | |
| **TOWNE CROSSING LP, LLC,** | § | |
| | § | |
| **Defendant.** | § | |

**DEFENDANT INLAND AMERICAN MCKINNEY TOWNE CROSSING LP'S**
**MOTION TO DISMISS AMENDED COMPLAINT AND MEMORANDUM OF LAW**

Defendant, INLAND AMERICAN MCKINNEY TOWNE CROSSING, LP ("Inland"),[1]

pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), moves to dismiss the Amended Complaint

filed by Plaintiff, GARY GAYLOR, and in support thereof states as follows:

**I.     INTRODUCTION.**

Plaintiff, a Georgia resident and self-proclaimed "tester" for purposes of ensuring that

places of public accommodation comply with federal law, has filed sixty-four (64) lawsuits in

less than three years in Georgia, Missouri, Tennessee, and Texas.[2]  Each suit commenced with

the same boiler-plate complaint, generally alleging both vague and elusive violations of the

Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* (the "ADA") located *somewhere* at a

defendant's business, and as to his purported standing to bring suit.  While most of these suits

---

[1]     Plaintiff named Inland incorrectly in both the Complaint and Amended Complaint as "Inland American McKinney Towne Crossing LP, LLC."

[2]     Plaintiff has one other lawsuit pending in Texas, which he filed on the same date as the instant action.  *See Gaylor v. Inland Western Dallas Lincoln Park LP, LLC*, No. 3:13-cv-02113-N (N.D. Tex. June 5, 2013).  The Amended Complaint in that suit is essentially a carbon copy of the one in this suit, and it is also the subject of a pending motion to dismiss.

settled in exchange for, *inter alia*, the payment of Plaintiff's attorneys' fees by the defendant, there is the occasional suit, as here, where the defendant files a motion to dismiss to challenge Plaintiff's purported standing to bring the action.[3]

In response to such a motion, Plaintiff simply files an amended complaint on the eve of dismissal in an effort to "drum up" standing by adding allegations that, even if true, were clearly known to him at the time he filed suit.[4]   This case is no different.   Suddenly, Plaintiff, <u>who resides 760+ miles from Inland's business</u>, now conveniently recalls that the predominant reason for his one past visit to the Dallas, Texas area was to search for a "reasonably priced" RV Park where he can maintain a "winter residence."   Interestingly, Plaintiff provided airline reservations from November 2012 to show that he allegedly went to Texas to search for the RV Park.   But one would think that an RV user, looking for a place to house his RV long term, would actually take his RV with him to a prospective RV park.   Nonetheless, even after the court accepts Plaintiff's allegations as true, as it must, they still have nothing to do with what is at the heart of this dispute: whether Plaintiff suffered an injury-in-fact at *Inland's business* within the meaning of Article III of the U.S. Constitution.

---

[3]   For a discussion of the "cottage industry" in which Plaintiff's engages, see *Rodriguez v. Investco, LLC*, 305 F.Supp.2d 1278, 1281 (M.D. Fla. 2004), where District Judge Gregory Presnell discusses how serial litigants, such as Plaintiff, use the recovery of attorneys' fees to abuse the ADA.

[4]   It is no accident that Plaintiff's initial complaints are routinely light on ultimate facts to support standing, such as the alleged dates of his past and future visits to public accommodations.   The reason for this litigation strategy is simple.   Plaintiff wants to avoid committing to certain facts, unless they are absolutely needed to avoid dismissal, because he then has to be cognizant of inadvertently making inconsistent allegations across the full range of his lawsuits that would damage his credibility.   For example, Plaintiff has provided Inland with twelve (12) other complaints that he intends to file against various businesses Inland owns in Texas.   The new allegations Plaintiff added to the Amended Complaint to show his purported standing will necessarily limit his allegations in the other complaints that are directed to showing his purported standing in those lawsuits.

In his haste to allege his way into this lawsuit, Plaintiff also clearly alleged inaccuracies in the Amended Complaint. Although he states that he "visits Texas once or twice a year," his one and only alleged visit to Inland's business occurred on November 4, 2012, and his next alleged visit is not scheduled to occur until "January 2014." Thus, based on his own allegations, Plaintiff does not visit Texas "once or twice a year." As will be discussed below, these inconsistencies, among others, show that the Amended Complaint is nothing more than a calculated design to avoid dismissal. Accordingly, the court should dismiss this action.

## II. BACKGROUND & PROCEDURAL HISTORY.

Plaintiff filed suit on June 5, 2013 for alleged violations of the ADA and Chapter 121 of the Texas Human Resources Code, Tex. Hum. Res. Code Ann. § 121.001, *et seq.* ("Chapter 121") at Inland's business. [*See generally* Dkt. 1]. Inland moved to dismiss the Complaint on August 5, 2013. [Dkt. 4]. In lieu of responding to Inland's motion to dismiss, Plaintiff filed the Amended Complaint on August 22, 2013, which attempts to cure numerous pleading deficiencies, in an effort to establish standing to bring this action. [Dkt. 6]. On September 3, 2013, the court entered an Order denying Inland's motion to dismiss as moot. [Dkt. 7].

Plaintiff seeks declaratory and injunctive relief and an award of attorneys' fees and costs under the ADA, as well as declaratory and injunctive relief and statutory damages under Chapter 121. [Dkt. 6 at pp. 6–7]. Plaintiff, "a resident of Georgia," alleges to be "a qualified individual with a disability under the ADA" who "use[s] a cane and/or a wheelchair to ambulate." [*Id.* at ¶¶ 3, 7–8]. Inland allegedly owns "McKinney Towne Crossing, generally located at 8900 State Highway 121, McKinney, Texas 75070" (the "Shopping Center") which is "open to the public and provides goods and services." [*Id.* at ¶¶ 9, 14].

Plaintiff allegedly visits Texas "once or twice per year for vacation and to visit friends and family" and "in early November 2012, [he] visited the greater Dallas, Texas area" in search of a location to maintain a "winter residence."   [*Id.* at ¶¶ 4–6].   The Amended Complaint, however, also shows that this allegation is inaccurate because it also states that Plaintiff will not return to Texas until at least "January 2014," more than one year since "November 2012."   [*Id.* at ¶¶ 4, 18].   During his only alleged visit to Dallas—November 4, 2012—Plaintiff allegedly visited the Shopping Center, where he "browsed most of the stores" and ultimately purchased one item for 50¢ at the Dollar Tree store.   [*Id.* at ¶ 15].   Other than November 4, 2012, Plaintiff alleges no other past visits to the Shopping Center.   [Dkt. 6 at ¶ 15].

During his visit to the Shopping Center, Plaintiff allegedly "encountered serious difficulty accessing the goods and services therein due to architectural barriers," that consist of inaccessible parking, curb cuts, routes, and sidewalks.   [*Id.* at ¶¶ 16, 19].   Plaintiff states that the alleged barriers to access are reflected in a series of photographs attached to the Amended Complaint.   [*Id.* at ¶ 16].   None of the photographs identify what the alleged barriers to access are; instead, they rely on conclusory allegations in the Amended Complaint that they depict violations of federal law.   [*Id.*].   Plaintiff has not alleged that he is qualified, through education or experience to opine that the photographs depict violations of federal law.   [*See id.*].

Plaintiff alleges that he intends to return to the Shopping Center in "January, 2014."   [*Id.* at ¶¶ 4, 18].   Plaintiff also alleges that "[i]ndependent of his intent to return as a patron . . . [he] additionally intends to return . . . as an ADA tester to determine whether the barriers to access stated [in the Amended Complaint] have been remedied."   [Dkt. 6 at ¶ 21].   Although the Amended Complaint does not state that Plaintiff visited the Shopping Center on November 4, 2012 solely to test for ADA compliance, the photographs attached thereto confirm that someone

visited the property with this intent because several photographs show a digital level (presumably that Plaintiff brought with him from Georgia even though he was apparently in the area to look for a RV Park) that allegedly demonstrates that certain slopes at the Shopping Center offend the ADA.  [*Id.* at ¶ 16, Ex. C at pp. 8–9].

## III.    STANDARD OF REVIEW.

Significantly, Inland is moving to dismiss Plaintiff's Amended Complaint under two rules, Rule 12(b)(1) and 12(b)(6); however only one standard of review governs both rules. Under Fifth Circuit law, a Rule 12(b)(1) challenge to subject matter jurisdiction for lack of standing may take one of two forms: a facial attack on the complaint or an attack on the factual basis for standing.  *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Where, as here, a movant facially attacks standing, the court must review the operative complaint by the same standard it would use under a Rule 12(b)(6) motion to dismiss.  *See id.*

When considering a Rule 12(b)(6) motion, and by extension a 12(b)(1) facial motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the non-movant.  *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002).  "While the district court must accept as true all factual allegations in the complaint, it need not resolve unclear questions of law in favor of the plaintiff."  *Kansa Reinsurance Co., Ltd. v. Congressional Mortgage Corp. of Texas*, 20 F.3d 1362, 1366 (5th Cir .1994). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (emphasis added). "It is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking."  *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998).

## IV.    ARGUMENT.

The Amended Complaint must be dismissed under both Rule 12(b)(1) and 12(b)(6). Plaintiff has not suffered a cognizable injury-in-fact within the meaning of Article III of the U.S. Constitution, and thus lacks standing.  Plaintiff also fails to state a claim because the Amended Complaint fails to plead with the level of specificity required by well-settled federal law.  The court should also dismiss the Chapter 121 claim because, in the absence of the ADA claim, the court has no independent basis for jurisdiction for a claim based solely on Texas state law.

The court must assure itself that any plaintiff attempting to invoke federal jurisdiction has suffered a sufficient injury to satisfy the "case or controversy" requirement of the Article III of the U.S. Constitution.[5]  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60 (1992).  The requirement that a plaintiff have constitutional standing "is an essential and unchanging part of the case-or-controversy requirement of Article III."  *Id.* at 559.  Constitutional standing is necessary to the court's jurisdiction, and must be addressed before proceeding to the merits.  *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 96 (1998).  A suit brought by a plaintiff without Article III standing is not a "case or controversy," and therefore, the court lacks jurisdiction to hear the claim.  *Id.* at 101.

Standing is not merely a pleading requirement, but "an indispensable part of the plaintiff's case."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983).  It must be determined as of the time plaintiff's complaint is filed.  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180 (2000) ("[W]e have an obligation to assure ourselves that [the plaintiff] had

---

[5]      Inland's argument for dismissal applies to Plaintiff's claims under both the ADA and Chapter 121 because Texas courts have found that the broad rights conferred by Chapter 121 are so similar to the ADA that analysis under either one of the regimes will suffice both.  *See Brown v. Lopez*, No. 04-02-006640CV, 2003 WL 21918587, *1 (Tex. App.—San Antonio, Aug. 13, 2003) (noting that Chapter 121 is "substantially similar to the ADA"); *see also Peters v. Norwegian Cruise Line Ltd.*, No. 01-05-00906-CV, 2007 WL 1633555, *11–12 (Tex. App.—Houston, June 7, 2007) (explaining how the policy behind Chapter 121 mirrors the ADA).

Article III standing <u>at the outset of the litigation</u>.") (emphasis added); *see also Carr v. Alta Verde Indus., Inc.*, 931 F.2d 1055 (5th Cir. 1991).  Subsequent amendments are ineffective, because "[b]y lacking standing to bring a claim [a plaintiff] also lack[s] standing to amend the complaint." *Wright v. Dougherty County*, 358 F.3d 1352, 1356 (11th Cir. 2004). "Belated efforts to bolster standing are futile." *Access 4 All, Inc. v. Wintergreen Commercial P'ship, Ltd.*, CIV.A. 3:05-CV-1307-G, 2005 WL 2989307 (N.D. Tex. Nov. 7, 2005) (quoting *Moyer v. Walt Disney World Co.*, 146 F.Supp.2d 1249, 1253 (M.D. Fla. 2000)).

To satisfy Article III, a plaintiff must establish: (1) that he has suffered an injury-in-fact; (2) that is fairly traceable to the challenged action of the defendant; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth*, 528 U.S. at 180–181; *see also Norkunas v. Seahorse NB, LLC*, 444 F. App'x. 412, 415 (11th Cir. 2011) (applying injury-in-fact element of Article III in context of Title III of the ADA).  Because Plaintiff cannot establish the first element, the latter two need not be addressed.

### A.   THE COURT LACKS JURISDICTION OVER THIS ACTION BECAUSE PLAINTIFF HAS NOT SUFFERED AN INJURY-IN-FACT.

The injury-in-fact element consists of two components.  *See Friends of the Earth*, 528 U.S. at 180–181.  First, the injury must be "concrete and particularized," which courts have interpreted to mean that the plaintiff has suffered a past injury at the hands of the defendant. *See id*.  Second, if, and only if past injury is established, injury-in-fact is not present unless the plaintiff also shows that he has future plans that will cause him a future injury that is "actual or imminent, not merely conjectural or hypothetical." *See id.*  Even if Plaintiff's allegations in the Amended Complaint establish past injury at the pleadings stage, which, as discussed below is questionable, the allegations still fail to show that he has an imminent future injury.

**1.      The Amended Complaint Does Not Show That Plaintiff Suffered A Past Injury.**

In Title III ADA cases in recent years, some federal courts, in their haste to analyze whether a plaintiff has an imminent future injury, have overlooked the importance of past injury as the threshold for entry into federal court.  *See, e.g.*, *Nat'l Alliance for Accessibility, Inc. v. Big Lots Stores, Inc.*, 1:11-CV-730, 2013 WL 3147721 (M.D.N.C. June 19, 2013) (analyzing future plans to return extensively, without detailed analysis of past exposure).  Without a showing of past injury, the court need not look to future injury, and is required to dismiss the action.

In 1974, the Supreme Court held that "[p]ast exposure to illegal conduct does not itself show a present case or controversy regarding injunctive relief . . . <u>if unaccompanied by any continuing, present adverse effects</u>."  *O'Shea v. Littleton*, 414 U.S. 488, 495–596 (1974) (emphasis added).  After the ADA became effective, a body of case law developed in accord with *O'Shea* holding that a plaintiff's alleged past exposure to alleged illegal conduct is only actionable where it is "based in reality," that is, (1) the plaintiff has either personally encountered or observed alleged barriers at a public accommodation or (2) has learned of them through "expert findings."  *See, e.g.*, *Parr v. L & L Drive-Inn Rest.*, 96 F.Supp.2d 1065, 1081 (D. Haw. 2000); *Access Now, Inc. v. South Florida Stadium*, 161 F.Supp.2d 1357, 1365 (S.D. Fla. 2001).

**a.      Plaintiff's Allegations That He Personally Observed The Alleged Barriers Are No More Than Naked Legal Conclusions.**

The Amended Complaint makes clear that Plaintiff's standing, if any, is based upon the fact that he personally encountered the alleged barriers at Inland's business.  *See South Florida Stadium*, 161 F.Supp.2d at 1365.  Here, Plaintiff alleges that he "personally observed" three types of alleged barriers to access at the Shopping Center: inaccessible parking, inaccessible curb cuts, and inaccessible routes and sidewalks.  [Dkt. 6 at ¶ 19].  The court should disregard each of

these alleged barriers because they amount to no more than legal conclusions of violations of the ADA.  Legal conclusions are insufficient to withstand a motion to dismiss, particularly when they are masquerading as factual allegations.  *Fernandez–Montes*, 987 F.2d at 284.

To be sure, Plaintiff states that the alleged barriers violate the ADA due to "excessive slopes" and "cross slopes"; however, the Amended Complaint is naked with respect to alleging any ultimate facts to support the conclusion that excessive slopes are present at Inland's business.  [*See* Dkt. 6 at ¶ 19].  In fact, the Amended Complaint contains no factual allegations to support Plaintiff's contention that excessive slopes and cross slopes are present.  What the Amended Complaint <u>does not allege</u> is just as important as what it does allege.  For example, Plaintiff does not allege that he attempted to navigate any parking spaces, curb cuts, sidewalks, or routes with his cane or wheelchair, but was unable to do so because the slopes were too steep.  What is more, Plaintiff does not allege that he himself is an expert or qualified to opine as to whether the alleged barriers to access violate the ADA.[6]  Therefore, in the absence of ultimate facts, there is no basis to support the inference that the alleged barriers violate federal law.

Plaintiff also relies on a series of photographs attached to the Amended Complaint to demonstrate the alleged barriers to access, which the court should also not consider because they too are no more than impermissible legal conclusions.  [Dkt. 6 at ¶ 16].  The photographs are allegations of the Amended Complaint because they are incorporated into the pleading through paragraph 16.  *See Stacey v. Peoria Cnty., Ill.*, 13-CV-1051, 2013 WL 3279997, *8 (C.D. Ill. June 27, 2013) (recognizing that photographs are allegations when incorporated into a complaint, and not evidence).  Paragraph 16 alleges that "architectural barriers" are "pictured in the

---

[6]    Even if Plaintiff were properly qualified as an expert, federal courts deciding Title III ADA cases continually reiterate the familiar rule that experts "cannot give an opinion as to her *legal conclusion, i.e.,* an opinion on the ultimate issue of law."  *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004).

photographs." [Dkt. 6 at ¶ 16]. The photographs do not identify what the alleged barriers to access even are. It is impossible to know what the photographs are attempting to show because none of them contain a reference point as to how the area photographed violates the ADA.

Remarkably, Plaintiff placed a digital level in several photographs, but made no effort to allege in the Amended Complaint whether the level supported or refuted his contention that there are excessive slopes at the Shopping Center. [*See* Dkt. 6 at ¶ 16, Ex. C at pp. 8–9]. This is improper because if the court were to accept this allegation as true, it would essentially be resolving "unclear questions of law in favor of the plaintiff." *Kansa Reinsurance Co.*, 20 F.3d at 1366. Plaintiff should have used the photographs only to show that he has been to the Shopping Center, and nothing more. In fact, Plaintiff's allegation that he has been to the Shopping Center would have been sufficient at the pleadings stage, even without the photographs.

In light of the legal conclusions masquerading as factual contentions in the Amended Complaint, the court, under Supreme Court precedent, is required to use a two prong approach to determining whether the Amended Complaint sufficiently alleges that Plaintiff personally encountered barriers to access at the Shopping Center. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). First, the court should disregard the legal conclusions, which are not entitled to be assumed true. *Id.* Then, the court should look only to the well-pleaded factual allegations to determine whether Plaintiff sufficiently alleged past exposure to illegal conduct. *Id.* After disregarding the legal conclusions, nothing left remains to suggest that Plaintiff encountered barriers at the Shopping Center. Accordingly, the court should dismiss the Amended Complaint.

### b.    A Single Prior Visit Is Insufficient To Show Past Injury.

The number of prior visits an ADA plaintiff makes to a public accommodation speaks to the likelihood that he will return in the future. In Title III cases, a single visit does not

sufficiently establish past injury because there is a presumption that a plaintiff who has visited a public accommodation only once is unlikely to return. *Davis v. Am. Nat. Bank of Texas*, 4:12-CV-382, 2012 WL 7801700, \*6 (E.D. Tex. Dec. 11, 2012) (citing *Molski v. Kahn Winery,* 405 F.Supp.2d 1160, 1163 (C.D. Cal. 2005)) (finding that when the plaintiff only visited the defendant's establishment once prior to filing suit and had no connection to the establishment, past patronage weighed against future harm and a finding of injury in fact); *Norkunas*, 777 F.Supp.2d at 1002 (ruling that plaintiff's failure to allege visits to property other than single occasion which formed basis of her complaint weighed against standing); *Waffle House, Inc.*, 5:10-CV-375-FL, 2011 WL 2580679, \*2 (E.D.N.C. June 29, 2011) (same); *Harty v. Tathata Inc.*, No. 5:10–CV–113–WW, 2011 WL 1261313, \*3 (E.D.N.C. Mar. 31, 2011) (same); *accord Lyons*, 461 U.S. at 101 (finding that a single instance of police brutality alone did not show likelihood of future injury as a result of the same conduct).

In fact, "ADA Title III plaintiffs, aware that a single visit to an establishment weighs against their having standing, are likely to visit the establishment twice before suing its owner, thus intentionally avoiding the single-visit rule." *Payne v. Sears, Roebuck & Co.*, 5:11-CV-614-D, 2012 WL 1965389, \*5 (E.D.N.C. May 31, 2012).  "Such litigation gamesmanship says nothing about a plaintiff's likelihood of suffering future injury." *Id.*  Thus, federal courts should review allegations of past injury to ensure themselves that the allegations are not merely a "red herring," designed to circumvent the single visit rule. *See id.*

Here, there is no question that the Amended Complaint only alleges one prior visit to Inland's business—November 4, 2012.  [*See* Dkt. 6 at ¶ 15].  This weighs heavily against standing. *See Sears, Roebuck & Co.*, 2012 WL 1965389 at \*5.  While Plaintiff has alleged that he visits Texas "once or twice per year," there are no allegations that he has visited Inland's

business during any of these alleged past visits, let alone McKinney, Texas for that matter. Plaintiff does not even allege any dates when these alleged prior visits of "once or twice per year" occurred, which makes the veracity of the entire allegation suspect.  If Plaintiff has routinely visited Texas with such frequency, then he would have had specific allegations for previous years, for example one to two visits in 2010, 2011, 2012, and 2013, showing when he was in Texas.  After all, Plaintiff clearly documented his November 2012 trip to Texas, so there is no legitimate reason why he should not be able to provide dates of these other prior visits, given that the travel alone would have required hotel reservations and the like, which are easily tracked.  Thus, the court need not analyze Plaintiff's alleged future injury because, in the absence of a recognizable past injury, he has no standing to maintain this action.

2.      **Plaintiff's Allegations Do Not Show That He Will Suffer An Imminent Future Injury At Inland's Business.**

Assuming, *arguendo*, the court finds that Plaintiff sufficiently alleged past injury, his allegations must also show a credible likelihood of an imminent future injury before he has standing.  Texas courts have found that ADA plaintiffs show an imminent future injury under the "intent to return" theory.[7]  *Hunter v. Branch Banking & Trust Co.*, 3:12-CV-2437-D, 2013 WL 4052411, *2 (N.D. Tex. Aug. 12, 2013).  Under the intent to return theory, it is reasonable to infer a plaintiff's future plans to return to an allegedly non-compliant public accommodation based on four factors: (a) proximity to the plaintiff's home to the area; (b) past patronage; (c) definitiveness of plans to return; and (d) frequency of travel.  *E.g.*, *Hunter*, 2013 WL 4052411 at *2; *see also Camarillo v. Carrols Corp.*, 518 F.3d 153, 158 (2d Cir. 2008).  These four factors

---

[7]      Texas courts have also found that the requirement to show imminent future injury is excused under the "deterrence theory," which is unavailable in this case.  *See* 42 U.S.C. § 12188(a)(1); *Hunter*, 2013 WL 4052411 at *2.

were first espoused by district courts in the Ninth Circuit.  *See D'Lil v. Stardust Vacation Club*, CIV-S-00-1496DFL PAN, 2001 WL 1825832, *4 (E.D. Cal. Dec. 21, 2001).

Thereafter, district courts in eight other circuits began to enter opinions that used the four factor test to evaluate standing.  *See Fiedler v. Ocean Properties, Ltd.*, 683 F.Supp.2d 57, 72 (D. Me. 2010) (First Circuit); *Access 4 All, Inc. v. G & T Consulting Co., LLC*, No. 06 Civ. 13736(DF), 2008 WL 851918, *8 (S.D.N.Y. Mar. 28, 2008) (Second Circuit); *Access 4 All, Inc. v. 539 Absecon Blvd., LLC*, CIV. 05-5624 (FLW), 2006 WL 1804578, *3 (D.N.J. June 26, 2006) (Third Circuit); *Equal Rights Ctr. v. Abercrombie & Fitch Co.*, 767 F.Supp.2d 510, 516 (D. Md. 2010) (Fourth Circuit); *Wintergreen Commercial P'ship*, 2005 WL 2989307 at *3 (Fifth Circuit); *Vaughn v. Rent-A-Ctr., Inc.*, 2:06-CV-1027, 2009 WL 723166, *7 (S.D. Ohio Mar. 16, 2009) (Sixth Circuit); *Brown v. Grand Island Mall Holdings, Ltd.*, 4:09 CV3086, 2010 WL 489531, *3 (D. Neb. Feb. 8, 2010) (Eighth Circuit); *Fox v. Morris Jupiter Associates*, 05-80689-CIV, 2007 WL 2819522, *4 (S.D. Fla. Sept. 25, 2007) (Eleventh Circuit).  Indeed, the continued use of the four factor test in various circuits makes it the majority view, particularly where, as here, the plaintiff resides a considerable distance from the public accommodation at issue.

The Eastern District of Texas has used the four factor test in four cases, all of which addressed whether automated teller machines violated the ADA, to analyze future plans to return.  *See Am. Nat. Bank of Texas*, 2012 WL 7801700 at *6; *Hunter v. First Nat. Bank Texas*, 4:12-CV-00355, 2012 WL 7801699, *4 (E.D. Tex. Dec. 11, 2012); *Davis v. First Nat. Bank of Trenton*, 4:12-CV-396, 2012 WL 7801707, *6 (E.D. Tex. Dec. 11, 2012); *Hunter v. First United Bank & Trust Co.*, 4:12-CV-374, 2012 WL 7004154, *5 (E.D. Tex. Dec. 11, 2012); *accord Wintergreen Commercial P'ship*, 2005 WL 2989307 at *3.  The court should rely on the four factor test, as it has done in the past, and hold that Plaintiff has no standing to bring this action.

*See, e.g.*, *Am. Nat. Bank of Texas*, 2012 WL 7801700 at *6; *First Nat. Bank Texas*, 2012 WL 7801699 at *4.   Neither the U.S. Supreme Court nor the Fifth Circuit, however, has yet considered the four factor test.

### a.   Proximity: Plaintiff Resides 760+ Miles Away.

A plaintiff's proximity to a public accommodation is generally probative of the likelihood that the plaintiff will return.   *See Camarillo*, 518 F.3d at 158.   Generally, unless he has continuing connections to the area, the further away a plaintiff finds herself from a business, the less likely she is to suffer future harm.  *See Molski,* 405 F.Supp.2d at 1163 ("Where the distance between [a plaintiff's residence and a public accommodation] is significant, <u>especially if it is in excess of 100 miles</u>, courts have often held that such a distance weighs against finding a reasonable likelihood of future harm.") (emphasis added); *see also Nat'l Alliance For Accessibility, Inc. v. Par Re Bc Cf L.L.C.*, 6:12-CV-1384-ORL-28, 2013 WL 1296272, *2 (M.D. Fla. Mar. 12, 2013) *report and recommendation adopted*, 6:12-CV-1384-ORL-28, 2013 WL 1296265 (M.D. Fla. Apr. 1, 2013) (finding that plainitff's residence located over 200 miles from defendant's business weighed against standing); *Big Lots Stores*, 2013 WL 3147721 at *4 (finding that plaintiff's residence more than 700 miles from defendant's business weighed heavily against standing); *Anderson v. Kohl's Corp.*, 2:12-CV-00822, 2013 WL 1874812, *4 (W.D. Pa. May 3, 2013) (finding it unlikely that plaintiff would return to defendant's business less than 25 miles from her residence because there were at least two locations of the business <u>closer to her residence</u>); *Reviello v. Philadelphia Fed. Credit Union*, CIV.A. 12-508, 2012 WL 2196320, *4 (E.D. Pa. June 14, 2012) (finding plaintiff's proximity did not establish an intent to return where plaintiff lived 50 miles from ATM); *Norkunas v. Park Rd. Shopping Ctr., Inc.*, 777 F. Supp. 2d 998, 1002 (W.D.N.C. 2011) ("[T]he distance of 120 miles between Plaintiff's

residence and the [premises] is too great for the Court to consider it likely that Plaintiff will have occasion to return to Defendant's establishment . . . ."); *cf., e.g., Am. Nat. Bank of Texas*, 2012 WL 7801700 at *6 (finding standing because plaintiff lived <u>seven miles</u> from the subject ATM).

Here, Plaintiff alleges to be "a resident of Georgia." [Dkt. 6 at ¶ 3]. When deciding a motion to dismiss, the court must limit its consideration to well-pleaded factual allegations, judicially noticed matters, and documents central to or referred to in the complaint.[8] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011). The court can take judicial notice of the geographic distance between the Georgia state line and the Shopping Center, which is approximately 760 miles, because such distance is capable of accurate and ready determination. *See* Fed. R. Evid. 201(b). Of course, it is unlikely that Plaintiff's residence is located on the Georgia state line, which means he resides even further away than 760 miles.

"[A] plaintiff's general travel to a state does not support a finding that said plaintiff has demonstrated a threat of future harm related to a specific establishment within the state." *Nat'l Alliance for Accessibility, Inc. v. Rite Aid of N. Carolina, Inc.*, 1:10CV932, 2011 WL 4499294, *9 (M.D.N.C. Sept. 27, 2011); *see also Norkunas*, 777 F.Supp.2d at 1002 (holding that plaintiff failed to show future injury based on travel through metropolitan area three to four times per year, where plaintiff had no reason to drive to defendant's establishment). Here, Plaintiff alleges that he travels to <u>Texas</u> "once or twice a year for vacation and to visit friends and family," which is false because his own allegations also show that he has only visited Texas on one past occasion in November 2012, and that he will not return until January 2014. [Dkt. 6 at ¶ 4].

---

[8]     The court may take judicial notice of facts that are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Nevertheless, this allegation has nothing to do with whether Plaintiff visits Dallas, McKinney, or the Shopping Center for that matter, during his trips to Texas generally "once or twice" per year, the dates of which are entirely absent from the Amended Complaint other than the one prior visit in November 2012. There are also no allegations that Plaintiff's "friends and family" live anywhere near the Shopping Center. These are important facts to consider because federal courts have found that ADA plaintiffs lack standing to sue business that are "off the beaten path" from their routes of travel. *See, e.g.*, *Chapel Hill North Properties*, 2013 WL 2285248 at *3 (dismissing claims in part because the plaintiff had no conceivable reason to alter her path of travel to visit the property at issue while traveling through the state). Consequently, the first factor weighs heavily against Plaintiff.

### b.     Past Patronage: Plaintiff Does Not "Prefer" This Location.

Federal courts have found that the past patronage factor should focus on whether a plaintiff's allegations shows that he "prefers" patronizing a particular location, which is especially relevant where, as here, the defendant's business consists of stores that are located in various cities nationwide and has the same goods and services available to plaintiffs in multiple locations. *See Fox v. Morris Jupiter Associates*, 05-80689-CIV, 2007 WL 2819522 (S.D. Fla. Sept. 25, 2007) (finding that plaintiff had standing because he preferred patronizing a particular location of Radio Shack store that was located close to family he had in the area); *see also Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002) (holding that past visits to a store, actual knowledge of barriers to access there, and statements that a plaintiff prefers a particular store is sufficient to establish actual or imminent injury); *Sears, Roebuck & Co.*, 2012 WL 1965389 at *5 (finding that plaintiff's two prior visits to a certain Sear's store before filing suit did not suggest that she preferred that location); *Wilson v. Costco Wholesale*

*Corp.*, 426 F.Supp.2d 1115, 1122 (S.D. Cal. 2006) (finding that a plaintiff's prior visit to a certain Costco store before he filed suit did not suggest that he preferred that particular location); *Molski*, 405 F. Supp. 2d at 1164 (finding that plaintiff's "demonstrated lack of preference for [wines from the defendant's business] . . . weigh[ed] against the likelihood of future harm"); *but see Disabled Patriots of Am., Inc. v. City of Trenton,* No. 07–CV–3165, 2008 WL 4416459, *5 (D.N.J. Sept. 24, 2008) (recognizing that an ADA plaintiff may overcome his lack of preference for a particular location provided that he has a "business or familial connection to the location").

Plaintiff's *one prior visit* to the Shopping Center undermines the notion that he "prefers" patronizing the specific locations of any of the stores having a national presence that are located there because, when viewed through the lens of common sense, one prior visit hardly rises to the level of showing that an individual prefers a certain location. Therefore, the number of prior visits to a particular location should be used as a metric to determine whether an ADA plaintiff prefers a location, and has a credible intent to return on a future date.

The Amended Complaint alleges no specific interest in any of the stores located at Inland's business. Thus, the past patronage factor weighs against him for all the same reasons as it did against the ADA plaintiffs in *Morris Jupiter Associates*, *Pickern*, *Sears, Roebuck & Co.*, and *Costco Wholesale Corp.*, where the respective courts found that the plaintiffs' allegations did not show that they preferred a particular store that was part of a national chain.[9] For the court to hold that Plaintiff prefers the Dollar Tree store (*i.e.*, the only store at the Shopping Center that the Amended Complaint actually shows he patronized) would mean it would have to find that the

---

[9]        The court is also permitted to take judicial notice of the Shopping Center's website, http://www.inlandgroup.com/american/images/400b44619_Bro.pdf, for purposes of a motion to dismiss. *See, e.g.*, *Caldwell v. Caldwell*, No. C05-4166, 2006 WL 618511, *4 (N.D. Cal. 2006) (finding that a court may take judicial notice of web site relating to motion to dismiss); *JB Oxford Holdings, Inc. v. Net Trade, Inc*. 76 F. Supp. 2d 1363, n.10 (S.D. Fla. 1999) (same). The website reflects approximately 43 stores and restaurants that are located at the Shopping Center.

only item Plaintiff purchased—"Googley Eyes"—caused him to prefer this particular location of the Dollar Tree store.  [*See* Dkt. 6 at Ex. B].

It is simply not credible that Plaintiff would travel 760+ miles to purchase a fungible item for 50¢, given the fact that Dollar Tree has numerous locations closer to his home.  *See, e.g.*, *Judy v. Pingue*, No. 2:08-cv-859, 2009 WL 4261389, *4 (S.D. Ohio Nov. 25, 2009).  Further, it strains the confines of common sense that Plaintiff could prefer a store that is located such an incredible distance from his residence, when his own allegations show that the only item he has ever purchased at the store is patently generic.  In *Judy*, the plaintiff alleged "that he prefer[ed] Donatos pizza, enjoy[ed] shopping in Worthington, and ha[d] friends in the area."  *Id.*  The *Judy* court found that the plaintiff lacked standing because, among other reasons, his desire to eat at a particular chain restaurant could have been fulfilled "at any number of locations" and therefore he did not have a credible desire to return to the property.  *Id.*  Accordingly, the past patronage factor weighs against Plaintiff.

### c.   Definitiveness of Intent to Return: Plaintiff's Purported Upcoming Trip In January 2014 Is Too Speculative.

The definitiveness of a plaintiff's intent to return to a place of public accommodation is another factor that federal courts consider that "arises from the very 'core' of the *Lujan* holding." *Brown v. Showboat Atl. City Propco, LLC*, CIV.A. 08-5145 NLH, 2010 WL 5237855, *9 (D.N.J. Dec. 16, 2010).  "To obtain forward-looking equitable remedies, a plaintiff must show she faces imminent threat of future injury."  *Fisher v. Univ. of Tex. at Austin*, 631 F.3d 213, 217 (5th Cir. 2011); *James v. City of Dallas*, 254 F.3d 551, 563 (5th Cir. 2001) (stating that a plaintiff must demonstrate that he is "likely to suffer future injury by the defendant").

When assessing the definitiveness of a plaintiff's plans to return, courts have considered booked hotel reservations, *see Disabled Patriots of Am., Inc. v. Fu*, No. 3:08CV542–RJC–DSC,

2009 WL 1470687, *3 (W.D.N.C. May 26, 2009), or plane tickets, *Lujan,* 504 U.S. at 579 (Kennedy, J., concurring) (explaining that a requirement that the plaintiff demonstrate the acquisition of airline tickets or announce a "date certain" to return to the location at the core of their suit is not trivial because a plaintiff must establish a personal stake in the case's outcome (citing *Lyons,* 461 U.S. at 101)), to be indicative of concrete plans, while vague and self-serving desires to revisit a particular public accommodation fall short of the definitiveness required to show a likelihood of future harm. *Norkunas,* 777 F.Supp.2d at 1002. Self-serving statements of a professed intent to return on a general date are essentially "some day" intentions to return because they lack concrete indicia of plans to return. *See Lujan,* 504 U.S. at 564 ("Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury."). And of course, any future visits that Plaintiff planned subsequent to June 5, 2013 (*i.e.,* the date he filed suit) are irrelevant to Plaintiff's standing because the facts supporting standing must exist as of the time the complaint is filed. *Laidlaw Envtl. Servs.,* 528 U.S. at 180.

The allegations in paragraphs 4 through 6 of the Amended Complaint are curiously timed in response to Inland's first motion to dismiss. Each of these allegations concerns a major decision that will affect Plaintiff's life, as it would any other individual considering buying a winter residence located hundreds of miles from their primary residence. Therefore, one would think that if Plaintiff has already "narrow[ed] down" property choices to the "Spring Creek Village located in Plano, Texas," and that he plans to return in four months to "finalize" these arrangements, that he would already have definitive plans to return in the form of hotel and/or airline reservations, or at a minimum, have allegations to show a prospective lease agreement or

real estate agent he has in the area.[10]    Clearly, Plaintiff attached past hotel and airline

reservations from his first and only visit to the Dallas, Texas area to the Amended Complaint, so

there is no reason why the same types of documents should not be included for the January trip.

Plaintiff likely failed to include any hotel or airline reservations to demonstrate travel

plans in January 2014 because, if he actually has such plans, they were not made until after he

filed suit, which means that they constitute belated efforts to bolster his purported standing. *Rite*

*Aid of N. Carolina*, 2011 WL 4499294, n.5 (declining to consider affidavit filed by plaintiff in

response to motion to dismiss that alleged future plans to return that did not exist at time plaintiff

filed suit); *Wintergreen Commercial P'ship*, 2005 WL 2989307 at *4 (declining to consider a

plaintiff's future plans to return that were only made concrete after complaint and motion to

dismiss were filed); *Brother v. Tiger Partner, LLC*, 331 F.Supp.2d 1368, 1374 (M.D. Fla. 2004)

(same).    Based on the first motion to dismiss, Plaintiff is certainly aware that Inland challenges

the definitiveness of his plans to return.    Noticeably, the Amended Complaint only provides

concrete indicia of Plaintiff's past visit to the Shopping Center and is silent as to providing

concrete indicia of his future plans.

In light of the foregoing authority, the definitiveness of plans to return factor is easily

decided.    As an initial matter, the allegations of the Amended Complaint are patently false

because contrary to their assertion that Plaintiff visits Texas "once or twice per year," his last

visit was in November 2012 and his next visit will not be until January 2014. [*See* Dkt. 6 at ¶¶ 4,

15].    What is more, Plaintiff's self-serving statement that he intends to return in January 2014

---

[10]      Ironically, although Plaintiff intends to maintain a winter residence in Plano, Texas, the
Amended Complaint is silent as to why he will travel out of his way to go to McKinney, Texas,
where the Shopping Center is located.    For example, Plaintiff only "browsed" most of the stores
at the Shopping Center and only patronized the Dollar Tree store, yet he does not allege that he
intends to return to McKinney because this is where the closest Dollar Tree store to Plano is
located, or that this is the only place where he may purchase "Googley Eyes."

amounts to no more than precisely the type of "some day" intention warned against by the Supreme Court. *Lujan*, 504 U.S. at 564. Plaintiff failed to provide any upcoming airline or hotel reservations to the Amended Complaint. If he had them, then they would have been attached in the same manner as he attached his past travel itineraries to the Amended Complaint. Plaintiff also alleges no special interest in any of the stores at the Shopping Center. And even if had, such allegations would not have been credible because the stores that comprise the Shopping Center are national stores which can fulfill patrons' desires in any number of locations.

Plaintiff's status as a "tester," which bears on the definitiveness of his intent to return is also not conclusive of his purported standing to bring his ADA claims. Although the Fifth Circuit has not yet addressed whether a tester, without more, has standing to bring ADA claims, other federal district courts have routinely found that a plaintiff may not create standing where it does not otherwise exist simply by alleging that he is a "tester" to ensure compliance. *See*, *e.g.*, *Norkunas*, 777 F.Supp.2d at 1005 ("[T]he law makes clear that a Title III plaintiff cannot use her status as a tester to satisfy the standing requirements where she would not have standing otherwise."); *Judy*, 2009 WL 4261389 at *5 (stating that "[a]ny tester status that [the plaintiff] might possess does not confer standing to seek prospective relief where he cannot show a reasonable likelihood of returning to [the] property"); *Kramer v. Midacamo*, 656 F.Supp.2d 740, 747 (N.D. Ohio 2009) (same); *Harris v. Stonecrest Care Auto Ctr., LLC*, 472 F.Supp.2d 1208, 1219–20 (S.D. Cal. 2007) ("Where [Title III] litigation is the only reason for a plaintiff's visit to a particular local establishment, once litigation is complete it is unlikely such a plaintiff will return to avail himself of the business' goods or services, or to visit the local business for any other reason."). Accordingly, Plaintiff's status as a tester does nothing to bolster his standing to pursue claims against Inland.

> ### d.      Frequency of Travel: Plaintiff Is Not A *Bona Fide* Patron.

Standing to pursue claims under Title III of the ADA is reserved for *bona fide* patrons of a public accommodation.  *See Stonecrest Care Auto Ctr.*, 472 F.Supp.2d at 1219 ("This [c]ourt is unable . . . to find any authority showing that Title III of the ADA was intended to create such broad rights against individual businesses by private parties who are not bona fide patrons, and are not likely to be bona fide patrons in the future."); *see also Hoewischer v. Park Shopping, Ltd.*, 3:10-CV-810-J-37JBT, 2011 WL 4837259, *5 (M.D. Fla. Oct. 12, 2011) (finding that ADA plaintiff lacked standing because, among other reasons, he failed to allege that he frequently traveled near the defendant's business); *cf. Am. Nat. Bank of Texas*, 2012 WL 7801700 at *6 (denying motion to dismiss in part because plaintiff alleged that she traveled in the area of the subject ATM at least one per month and lived seven miles away).  A naked allegation that a plaintiff "frequently travels" near the defendant's business is patently insufficient to establish standing.  *Wintergreen Commercial P'ship.*, 2005 WL 2989307 at *4.  Failing to provide information regarding frequency of travel near the defendant's business militates against standing.  *City of Trenton*, 2008 WL 4416459 at *6.

In cases where, as here, a Plaintiff only alleges to return to a state generally and not specifically to the public accommodation at issue within the state, federal courts decline to find that the frequency of travel factor has been met.  *See Norkunas*, 777 F.Supp.2d at 1002.  For example, in *Norkunas*, although the court accepted as true plaintiff's claim that he "travel[s] through the Charlotte metropolitan area . . . three to four times per year," the court found that this fact did not give plaintiff standing when plaintiff had "little conceivable reason to leave the immediate I–77/I–485 corridors, and no reason at all to drive the distance between the interstate highway and the [establishment] in the course of his travels."  *Norkunas*, 777 F.Supp.2d at 1002.

The same rationale applies here.  Plaintiff fails to allege that he travels to McKinney, Texas or in the general vicinity of Inland's business when he travels to Texas.  And the only allegation of Plaintiff routinely visiting Texas is false because he last visited in November 2012 and will not return until January 2014, yet he alleges that he returns to Texas "once or twice per year."  For all the court and Inland knows, Plaintiff may be returning to some other location in Texas located hundreds of miles away from the Shopping Center.  Plaintiff is not a *bona fide* patron of the Shopping Center because he must travel some 760 miles to even patronize the stores and restaurants located therein, which makes it impossible for Plaintiff to both reside in Georgia and frequent the Shopping Center.  As a result, the fourth factor weighs heavily against Plaintiff's purported standing to bring this action.

### e.      Plaintiff's Litigation History.

In addition to the four factor test analyzed above, Texas federal courts have also specifically found that "a plaintiff's litigation history may undercut her attempt to prove an intent to return."  *Hunter*, 2013 WL 4052411 at *5; *accord Nat'l Alliance for Accessibility, Inc. v. Belk, Inc.*, 2013 WL 1614672, *3 (E.D.N.C. Apr.15, 2013) (finding it implausible that an out-of-state ADA plaintiff who resided approximately 700 miles from the defendant's business, and who planned to return to the state one or two times per year, would return to 32 properties she had sued in the state); *Nat'l Alliance for Accessibility, Inc. v. Bhuna Corp.*, 1:11CV79, 2011 WL 6935497, *3 (W.D.N.C. Dec. 3, 2011) (same); *Nat'l Alliance for Accessibility, Inc. v. Waffle House*, 2011 WL 2580679 at *3 (same); *Norkunas v. Wynn Resorts Holdings, LLC,* 2007 WL 2949569, at *4 (D. Nev. Oct.10, 2007) (stating that "a plaintiff's litigation history can undercut the sincerity of his or her expressed intent to return"); *Brother*, 331 F.Supp.2d at 1374 (finding it

"simply implausible" that an ADA plaintiff had intentions to return to "all of the fifty-four" business he sued which were located in the same state where he lived).

Plaintiff's incredible number of lawsuits undermines his credibility with respect to whether he intends to return to the Shopping Center in the future.   All of his lawsuits, approximately sixty-four in total, contain the same allegation that he intends to return to the defendants' businesses, which are located in various cities within the Northern District of Georgia, Eastern District of Missouri, Eastern District of Tennessee, and Eastern and Northern Districts of Texas.   Taking Plaintiff's combined allegations in all of these lawsuits as true that he will return to sixty-four businesses located hundreds of miles apart exceeds what the *Brother* court found unreasonable, where the plaintiff had sued fifty businesses located in the same state where he resided.   As a result, the court should consider Plaintiff's litigation history when opining on whether Plaintiff established injury-in-fact under the intent to return approach.

**B.     PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF BECAUSE THE ALLEGATIONS OF THE COMPLAINT ARE VAGUE, LEGAL CONCLUSIONS.**

Independent of Inland's argument for dismissal based on Rule 12(b)(1), above, the court should also dismiss this action under Rule 12(b)(6) because the allegations of the Amended Complaint do not comport with well-settled case law.   Under a Rule 12(b)(6), like a 12(b)(1) motion waging a facial attack, the court accepts the allegations as true and is required to draw all reasonable inferences in the plaintiff's favor in determining whether the complaint states a claim upon which relief can be granted.  *Higdon v. Hensley*, 49 F.3d 728 (5th Cir. 1995).  A complaint must contain enough factual allegations to "nudge" the plaintiff's claims "across the line from conceivable to plausible," or the complaint must be dismissed.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To state a *prima facie* claim under Title III of the ADA, a plaintiff must show (1) that he is a disabled individual; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) the defendants discriminated against the plaintiff within the meaning of the ADA on the basis of his disability.  *See* 42 U.S.C. § 12182(a).  For pleading purposes, Plaintiff sufficiently alleged that he is a disabled individual and that Inland owns, leases, or operates a place of public accommodation; therefore, the only element in dispute is whether the Amended Complaint sufficiently alleges that Inland discriminated against Plaintiff on the basis of his disability.  The Amended Complaint does not do so because it vaguely describes the alleged barriers, fails to identify where they are located, and impermissibly seeks to expand Plaintiff's purported standing to pursue barriers that do not relate to his disability.

### 1.      Plaintiff's Allegations Force The Court To Engage In Guesswork.

There is a common sense approach to evaluating whether the Amended Complaint states a claim upon which relief can be granted that cannot be overstated.  The public accommodation at issue in this lawsuit is not a single building with a parking lot having only a few spaces, one sidewalk out front, and several curb cuts.  By contrast, Inland's business is a massive shopping complex containing over 43 stores and restaurants, with hundreds of parking spaces, numerous sidewalks, curb cuts, and routes of travel.  So, allegations suggesting that there are violations of federal law "somewhere" in this sea of development does not place Inland on fair notice of the claims against it.  From Plaintiff's allegations, Inland cannot determine if it even owns all of the parking, curb cuts, and routes and sidewalks "throughout the property."[11]

---

[11]     For example, it is not uncommon for anchor tenants at a shopping center to own its parking, sidewalks, and curb cuts adjacent to their businesses.  So, the "barriers," as currently alleged, could be directed at areas of the Shopping Center that Inland does not own.

From a common sense perspective, the better practice would certainly be for Plaintiff to specifically allege the locations of the alleged barriers at the Shopping Center, particularly given that Plaintiff alleged that he "personally observed" them, or at a minimum, Plaintiff should re-plead that his knowledge of alleged barriers is based on expert findings.  Stated another way, if Plaintiff personally observed them, then he should have no problem specifically alleging the locations of the alleged barriers to access.  Requiring Inland to blindly inspect all of the parking areas, curb cuts, routes and sidewalks at the Shopping Center would do no more than create unnecessary costs and be the equivalent of Plaintiff conducting a fishing expedition on nothing more than mere speculation that alleged barriers to access exist.

> **2.     The Allegations Of The Complaint Do Not Comport With Well-Settled Rules Of Pleading.**

In evaluating whether a plaintiff has stated a claim for relief, conclusory allegations are "not entitled to be assumed true."  *Iqbal*, 556 U.S. at 681.  Here, the incredible vagueness and careless ambiguity of the alleged non-exclusive list of violations of the ADA in paragraph 19 of the Amended Complaint renders the alleged barriers so unintelligible as to fall below the minimum "notice pleading" standards set forth in Fed. R. Civ. P. 8.  *See, e.g.*, *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 955 (9th Cir. 2011) (finding that ADA complaint is deficient when it leaves "the federal court to guess which, if any, of the alleged violations deprived [the plaintiff] of the same full and equal access that a person who is not wheelchair bound would enjoy"); *Hernandez v. Polanco Enterprises, Inc.*, No. 11-cv-02247, 2013 WL 4520253, *5 (N.D. Cal. Aug. 23, 2013) ("Only barriers identified 'in the complaint itself' satisfy Rule 8").

Here, the Amended Complaint has not been pled with the level of specificity required by *Twombly* and its progeny, or Fed. R. Civ. P. 8.  To properly plead alleged barriers, ADA plaintiffs must use of one of two standards: (1) "identify a specific area where barriers exist, for

example a bedroom," or (2) "identify each barrier presented by an architectural feature with enough specificity to preclude the plaintiff from later alleging a different barrier stemming from the same feature." *Polanco Enterprises*, 2013 WL 4520253 at *5.

Here, the Amended Complaint fails to confirm to either standard because it merely alleges that Plaintiff encountered certain alleged barriers "throughout the property." [Dkt. 6 at ¶ 19]. These allegations fail to identify a "specific area," where the alleged barriers exist. To conform to proper pleading standards, Plaintiff, under *Polanco Enterprises*, should have alleged, for example, the sidewalk located in front of the Dollar Tree store contains an excessive slope. Having failed to make this type of "specific area" allegation, the court must determine whether, nonetheless, Plaintiff's allegations are tied to "an architectural feature," such that Inland can locate where the alleged barriers to access are located. *Polanco Enterprises*, 2013 WL 4520253 at *5.

The allegations also fail to meet the "architectural feature" standard espoused by the *Polanco Enterprises* court because they are legal conclusions and bare assertions that federal courts have found to be devoid of further factual enhancement. *E.g.*, *Nat'l Alliance for Accessibility, Inc. v. Millbank Hotel Partners*, CIV.A. RDB 12-3223, 2013 WL 653955 (D. Md. Feb. 20, 2013). To be sure, Plaintiff makes no attempt to tie the alleged barriers to any "architectural feature" at Inland's business, such as, for example, the parking spaces between the light poles in the north end of the parking lot. Simply put, the Amended Complaint provides no facts about the locations of the alleged barriers, how Plaintiff encountered the alleged barriers to access, or how they affected his disability.

Federal courts have ordered ADA plaintiffs to file more definite statements when, as here, alleged barriers are vaguely pled. *See, e.g.*, *Walden v. Taubman Regency Square*

*Associates, LLC*, No. 3:10-cv-855-JAG, Dkt. 8 (E.D. Va. April 5, 2011) (ordering plaintiff to file a more definite statement and re-plead every alleged violation with "precise information allowing the Court to determine whether the plaintiff had a pre-filing factual basis for the allegation and allowing the defendant to respond to the plaintiff's precise allegations" by listing the date the plaintiff visited the property, the location of the violation and a precise description of the alleged barrier, including measurements, if available).  The *Walden* court also ordered that the plaintiff, his attorneys, and any agents could not re-visit the property until after the plaintiff had amended his allegations in order to prevent the plaintiff and/or his counsel from visiting the property after-the-fact to expand the plaintiff's standing.  *Id.*

Should the court dismiss the Amended Complaint, without prejudice, it should impose conditions similar to those in *Walden* because the opinion stands for the proposition that standing is essentially determined by a "snapshot" as of the date the complaint is filed.  The *Walden* rationale is sound because it prevents plaintiffs from revisiting a public accommodation after suit has been filed in order to drum up standing to gain entry into federal court.  The court should adopt the *Walden* rationale as its own.

### 3.    The Alleged Barriers Must Relate To Plaintiff's Disability.

Although Inland concedes that, for pleading purposes, Plaintiff has adequately alleged that he has a disability within the meaning of the ADA, this alone does not give him "carte blanche standing to pursue Title III claims that every disabled person may have."  *Ass'n for Disabled Americans, Inc. v. 7-Eleven, Inc.*, No. 3:01-CV-0230-H, 2002 WL 546478, *4 (N.D. Tex. Apr. 10, 2002).  At most, ADA plaintiffs have standing to pursue claims related to their specific disability.  *Id.* (emphasis added); *see also  Steger v. Franco, Inc.*, 228 F.3d 889, 893 (8th Cir. 2000)  (finding that visitor to office building could not seek relief for ADA violations in

building not related to his disability); *Ass'n for Disabled Americans, Inc. v. Claypool Holdings LLC*, No. IP00-0344-C-T/G, 2001 WL 1112109, *21 (S.D. Ind. Aug. 6, 2001) (limiting a plaintiff's standing to the barriers raised in the complaint related to his disabilities).

Paragraph 20 of the Amended Complaint shows that Plaintiff is seeking relief for "other violations of the ADA," in addition to those identified in paragraph 19. This is impermissible because these "other violations" are not identified in the Amended Complaint and, by extension, it is impossible for the court to know if these "other violations" relate to Plaintiff's mobility impairment. The court should not permit Plaintiff to expand his purported standing "to pursue claims beyond the scope of Article III." *7-Eleven, Inc.*, 2002 WL 546478 at *4.

### C.     THERE IS NO INDEPENDENT BASIS FOR THE COURT TO EXERCISE JURISDICTION OVER THE TEXAS STATE LAW CLAIM.

As an alternative basis for dismissal of Plaintiff's Chapter 121 claims, *see supra* note 5, the court should also "decline to exercise supplemental jurisdiction" over the Chapter 121 claims because in the absence of the ADA claim, there is no other claim over which the court has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3). Plaintiff's only jurisdictional linchpin to this forum is through 28 U.S.C. § 1331.[12]   [Dkt. 6 at ¶ 1]. Supplemental jurisdiction should not ordinarily be exercised where there is no federal claim. *Willis v. Lacox*, 9:10CV108, 2012 WL 441198, *10 (E.D. Tex. Feb. 10, 2012) (citing *Slaughter v. Allstate Insurance Co.*, 803 F.2d 857 (5th Cir. 1986)). Refusal to entertain state law claims pursuant to supplemental jurisdiction is favored when, as here, (1) federal claims to which they are pendent are dismissed and (2) factors of judicial economy, convenience, and fairness to litigants are not present. *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir.

---

[12]    But even if Plaintiff had alleged diversity jurisdiction pursuant to 28 U.S.C. § 1332, such alleged jurisdiction would fail because there are no citizenship allegations in the Amended Complaint and the amount in controversy does not exceed $75,000.

2008).  Here, the court should dismiss the ADA claims, and because this action is in its infancy and no discovery has yet occurred, judicial economy and convenience do not counsel towards the court exercising supplemental jurisdiction.   Accordingly, in the absence of Plaintiff's ADA claim, the court should also dismiss Plaintiff's Chapter 121 claims.

**WHEREFORE,** Defendant, INLAND AMERICAN MCKINNEY TOWNE CROSSING, LP, respectfully requests that the court enter an Order (a) dismissing Plaintiff's claims against Inland pursuant to Fed. R. Civ. P. 12(b)(1), with prejudice; (b) alternatively, dismissing Plaintiff's claims against Inland pursuant to Fed. R. Civ. P. 12(b)(6); (c) awarding attorneys' fees and costs; and (d) any such further relief as the court deems just and proper.

Dated: September 19, 2013                              Respectfully submitted,


By:     *s/ Farrell A. Hochmuth*_____
        Farrell A. Hochmuth
        Texas Bar No. 24041107
        Federal Bar No. 37072
        fhochmuth@bakerlaw.com
        Baker & Hostetler LLP
        1000 Louisiana Street
        Suite 2000
        Houston, TX  77002-5018
        Telephone: 713.751.1600
        Facsimile: 713.751.1717

        *Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

 I HEREBY CERTIFY that the foregoing has been electronically filed using this Court's ECF system, which will serve an electronic copy to Jeff A. Wells, Esq., Wells Crosland, PLLC, 12225 Greenville Ave. Suite 700, Dallas, Texas 75243, on this 19th day of September 2013.


*s/ Farrell A. Hochmuth*
Farrell A. Hochmuth
